631 S.E.2d 294

The STATE, Respondent,

v.

Willie COCHRAN and Reggie James, Appellants.

No. 4116.

Court of Appeals of South Carolina.

Heard May 8, 2006.
Decided May 30, 2006.

Tara Dawn Shurling, of Columbia, for Appellants.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for Respondent.

KITTREDGE, J.:

Willie Cochran and Reggie James were convicted by a jury of first-degree burglary and sentenced. Reggie James was also convicted and sentenced for assault and battery of a high and aggravated nature.[1] They appeal from the trial court's granting of the State's *Batson* motion and quashing the first jury selected. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We reverse because the trial court failed to adhere to the mandated process for the handling of a *Batson* motion, and the jury that convicted Appellants was comprised of jurors whom the trial court erroneously prohibited Appellants from striking.

## STANDARD OF REVIEW

In the typical appeal from the granting or denial of a *Batson* motion, the appellate courts give deference to the findings of the trial court and apply a clearly erroneous standard. *State v. Shuler,* 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001). This standard of review, however, is premised on the trial court following the mandated procedure for a *Batson* hearing. Here, where the assignment of error is the failure to follow the *Batson* hearing procedure, we must answer a question of law. When a question of law is presented, our

---

1. Appellant Reggie James was also found guilty of malicious injury to personal property; however, after the verdict, and despite appropriate motions made during the course of the trial, the trial court decided to revisit this issue and found "no testimony" of vandalism. Accordingly, the court directed a verdict of acquittal as to this charge.

standard of review is plenary. *See* S.C. Const. art. V, 5 and 9; S.C.Code Ann. 14–3–320 and –330 (Supp.2005); S.C.Code Ann. 14–8–200 (Supp.2005) (Supreme Court and Court of Appeals have jurisdiction to correct errors of law).

## DISCUSSION

### I.

We begin our discussion mindful of the difficult task our trial judges encounter in evaluating the propriety of the wide-ranging reasons given for the exercise of peremptory challenges. At the appellate level, we view issues like a *Batson* challenge through the lens of hindsight, and from that perspective, we must remain sensitive to the vagaries and burdens facing trial judges. Accordingly, we are not easily persuaded to second-guess a trial court's discretionary calls. By design, the clearly erroneous standard of review (applicable in the typical *Batson* appellate setting) follows suit by placing constraints on the appellate court. The reversal here comes not from second-guessing, but as a result of a legal error in not adhering to the mandated *Batson* procedure, specifically the failure to require the opponent of the strike to prove purposeful discrimination. Even so, we recognize the experienced and able trial judge was presented with a problematic *Batson* motion. We now proceed to the case at hand.

### II.

During jury selection, Appellants, who are black, exercised ten of their twenty peremptory challenges, striking two black women, three white men, and five white women.[2] The State opposed Appellants' strikes and requested a *Batson* hearing.

In *Batson*, the Supreme Court held the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prevents the prosecution from striking potential jurors on the basis of race. 476 U.S. at 89, 106 S.Ct. 1712. In *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120

---

2. A defendant charged with burglary is entitled to ten peremptory challenges and the State is entitled to five. S.C.Code Ann. § 14–7–1110 (Supp.2005). Codefendants, tried jointly, are entitled to twenty peremptory challenges. *Id.*

L.Ed.2d 33 (1992), the Supreme Court expanded *Batson*, holding "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." Thus, during jury selection, either the defendant or the State may oppose the peremptory challenge of a juror who is a member of a cognizable racial group.[3] Once a peremptory challenge is opposed, the trial court must, upon request, conduct a *Batson* hearing and adhere to the procedures set forth in *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and adopted by our supreme court in *State v. Adams*, 322 S.C. 114, 124, 470 S.E.2d 366, 372 (1996).

■ In *Purkett*, the Supreme Court announced:

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

514 U.S. at 767, 115 S.Ct. 1769. The Supreme Court observed "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible." *Id.* at 767–68, 115 S.Ct. 1769. At step two, therefore, the proponent of the strike does not carry "any burden of presenting reasonably specific, legitimate explanations for the strikes." *Adams*, 322 S.C. at 123, 470 S.E.2d at 371. Therefore, "[u]nless a discriminatory intent is inherent" in the explanation provided by the proponent of the strike, "the reason offered will be deemed race neutral" and the trial court must proceed to the third step of the *Batson* process. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *see e.g., Payton v. Kearse*, 329 S.C. 51, 56, 495 S.E.2d 205, 208 (1998) (striking a juror because she was a "redneck" evinces a discriminatory intent and is therefore not facially race-neutral).

---

3. *See also J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (recognizing the Fourteenth Amendment to the United States Constitution prohibits the striking of a juror on the basis of gender).

At step three, the opponent of the strike must show the reason offered, though facially race-neutral, was actually mere pretext to engage in purposeful racial discrimination. *Adams,* 322 S.C. at 124, 470 S.E.2d at 372. The opponent of the strike carries "the ultimate burden of showing purposeful discrimination" and must demonstrate the pretextual nature of the stated reason for the strike. *Id.* This burden is generally established by showing similarly situated members of another race were seated on the jury. *Id.* at 123, 470 S.E.2d at 371.

As our case law illustrates, unless the discriminatory intent is inherent in a fundamentally implausible explanation, the opponent of the strike must make a bona fide showing that the proponent of the strike seated a juror who shared nearly every quality with the struck juror other than race to establish pretext. When the opponent of the strike proves the proponent of the strike practiced purposeful racial discrimination, the trial court must quash the entire jury panel and initiate another jury selection de novo. *See State v. Jones,* 293 S.C. 54, 58, 358 S.E.2d 701, 704 (1987), *abrogated on other grounds by State v. Chapman,* 317 S.C. 302, 306, 454 S.E.2d 317, 320 (1995); *see also State v. Heyward,* 357 S.C. 577, 580, 594 S.E.2d 168, 169 (Ct.App.2004).

### III.

We now turn to the first jury selection and ensuing *Batson* motion. Initially, we note the first jury was diverse. It was comprised of one white woman, three black men, four white men, and four black women. Thus, the composition of the first jury does not indicate Appellants engaged in purposeful racial discrimination. *See State v. Shuler,* 344 S.C. 604, 621, 545 S.E.2d 805, 813 (2001) ("[T]he composition of the jury panel is a factor that may be considered when determining whether a party engaged in purposeful discrimination pursuant to a *Batson* challenge.").

Additionally, we disagree with the State's argument that Appellants embarked on a "pattern" of striking jurors because of their race. Appellants did not use their peremptory challenges solely on jurors from a single racial group. They selected a white male as their first juror, and first struck a black female. Further, although Appellants ultimately struck

five white women, they also struck two black women, and seated one white woman and four white men. *See State v. Ford*, 334 S.C. 59, 66, 512 S.E.2d 500, 504 (1999) ("Although appellant exercised most of his strikes against white jurors, he did not strike every white juror. . . . [T]he fact that appellant used most of his challenges to strike white jurors is not sufficient, in itself, to establish purposeful discrimination."). Appellants used only ten of their twenty allotted peremptory challenges. If they intended to discriminate against white jurors, they certainly would have exercised their peremptory challenges more liberally. Instead, Appellants seated five white jurors.

Despite the diversity of the first jury and the fact that Appellants did not appear to engage in a pattern of purposeful racial discrimination, the State opposed Appellants' strikes and requested a *Batson* hearing. We now examine the first *Batson* hearing, which in our view demonstrates the trial court's failure to follow the mandated *Batson* procedure.

Appellants' counsel first explained that he struck Juror 87, a black woman, because she gave an indignant and outraged expression. The record reveals that the State had no interest in challenging the striking of black jurors, and the matter was not pursued.

Appellants' counsel next explained that he struck Juror 63, a white woman, because she shared the last name of a local Deputy Sheriff. Because this reason was facially race-neutral, Appellants satisfied step two, and the State was required to prove Appellants engaged in purposeful racial discrimination to satisfy step three. *Purkett,* 514 U.S. at 767–68, 115 S.Ct. 1769 (holding that at the second step of the *Batson* process the proponent of the strike does not have to present a persuasive or even a plausible reason, only a race-neutral one). The State merely countered that neither Appellants nor their counsel knew for sure whether Juror 63 was related to the Deputy Sheriff with the same last name. The trial court was persuaded by the State's argument and found pretext. This was error. The reason for striking Juror 63 was race-neutral, and the State failed to carry its burden of proving purposeful discrimination.

 Appellants' counsel next explained that he struck Juror 52, a white woman, because she gave an "indignant" and "shocked" look. The trial judge preempted the State's response, noting that he did not observe any such indignant or shocked expression from Juror 52. The trial court pronounced Appellants' reason as pretextual. The demeanor of a prospective juror is generally a race-neutral reason for employing a peremptory challenge. *State v. Tucker,* 334 S.C. 1, 8, 512 S.E.2d 99, 102 (1999) ("[C]ounsel may strike venire persons based on their demeanor and disposition."). We hold, however, that where a strike is based solely on a purported specific demeanor and disposition, and the trial judge makes an express and contrary finding, the deferential clearly erroneous standard of review applies.

 An express finding by the trial court will, unless clearly erroneous, trump counsel's stated perception of a prospective juror's demeanor and disposition. In this situation, the trial court determines counsel's credibility. *See Miller–El v. Cockrell,* 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("Deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations."); *Hernandez v. New York,* 500 U.S. 352, 364–66, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province' "); *State v. Shuler,* 344 S.C. 604, 615–16, 545 S.E.2d 805, 810–11 (2001) ("Often the demeanor of the challenged attorney will be the best and only evidence of discrimination, and 'evaluation of the prosecutor's mind lies peculiarly within a trial judge's province.' ") (quoting *Hernandez,* 500 U.S. at 364–66, 111 S.Ct. 1859); *State v. Casey,* 325 S.C. 447, 454, 481 S.E.2d 169, 173 (Ct.App.1997) ("The trial court must often base its decision on credibility determinations, and its rulings on discrimination are accorded great deference on appeal."); *State v. Guess,* 318 S.C. 269, 272–73, 457 S.E.2d 6, 8 (Ct.App.1995) ("Typically, the decisive question becomes whether [counsel's] race-neutral explanation for a peremptory challenge should be believed.... [T]here is seldom much evidence in the record bearing on that issue, and the trial court's findings regarding purposeful discrimination necessarily will rest largely on the evaluation of demeanor and

credibility of counsel. Therefore, those findings are given great deference and will not be set aside unless clearly erroneous.") (citations omitted).

The rule—extending considerable deference to a trial judge's credibility determinations—could not be otherwise without undermining the remaining remnants of *Batson*. For example, if a party were able to overcome every *Batson* challenge by merely claiming that a prospective juror's demeanor and disposition were somehow inappropriate, the equal protection principles underlying *Batson* would be weakened. The trial court serves an important gatekeeping role in this regard. Our decision today in no manner diminishes the continuing critical role of counsel's (or a party's) perception of a prospective juror's demeanor and disposition in the exercise of peremptory challenges. In the absence of an express and contrary finding by the trial court, a party's striking of a juror based on demeanor and disposition should be upheld by the trial court. As for Juror 52, because of the express findings of the trial court, the finding of pretext is not clearly erroneous.

Appellants' counsel then explained he struck Juror 78, a white woman, because she is the wife and office manager of a prominent dentist in the community. The employment status of a prospective juror is a race-neutral reason for using a peremptory challenge. *State v. Haigler*, 334 S.C. 623, 632, 515 S.E.2d 88, 92 (1999) (unemployment is a race-neutral reason for strike); *Ford*, 334 S.C. at 65, 512 S.E.2d at 504 (place of employment is a race-neutral reason for strike); *see Adams*, 322 S.C. at 125, 470 S.E.2d at 372 (type of employment is a race-neutral reason for strike); *State v. Flynn*, 368 S.C. 83, 85, 627 S.E.2d 763, 765 (Ct.App.2006) (State's categorization of a Head Start director as "a very liberal job" was a race-neutral reason for striking the juror). Because Appellants offered a race-neutral reason for striking Juror 78, the burden shifted to the State to show purposeful racial discrimination. Before the State had an opportunity to carry its burden, the trial court asked Appellants' counsel if he knew Juror 78.

Counsel responded that he did not know Juror 78 but that he knew her husband. The court responded:

The Court: Well, ... my thinking is if you try to prejudice somebody by their position, I mean as long as it's not law enforcement or something like that, I think that you don't know what her thinking is if you don't know her.

The trial court then found the striking of Juror 78 violated *Batson.* As noted, unless discriminatory intent is inherent in the explanation provided by the proponent of the strike, the standard announced in *Purkett* and *Adams* does not require the proponent of the strike to carry any burden once a race-neutral reason is offered for the strike. The burden is on the opponent of the strike to show purposeful racial discrimination. The trial court erred when it, in effect, placed the burden on Appellants to disprove racial discrimination.

Counsel for Appellants next explained that he struck Juror 90, a white man, because he was a retired farmer. The employment status of a prospective juror is a race-neutral reason for using a peremptory challenge. *Ford,* 334 S.C. at 65, 512 S.E.2d at 504. Here again, the trial court found Appellants' counsel's reason for striking Juror 90 pretextual without requiring the State to say a word, much less prove purposeful racial discrimination.

Appellants' counsel next explained he struck Juror 15, a black woman. No reason for the strike was sought, as neither the court nor the State was concerned with the Appellants' striking of black jurors.

Appellants' counsel then stated he struck Juror 25, a white woman, because she worked as a magistrate judge's secretary. The trial court found this reason was not pretextual, presumably because her employment was law-related.

Appellants' counsel then explained he struck Juror 41, a white man, because he gave "a more outraged look than the others." The trial court, without hearing from the State and without making a finding on the juror's demeanor, simply declared the reason pretextual:

The Court: Okay. I find that that's pretextual. The next one.

The trial court failed to follow the proper *Batson* procedure, and this was error.

Appellants' counsel next explained that Juror 7, a white man, was struck, because "[h]e's an insurance agent and his wife is a bank teller." Counsel also informed the court that the juror "said something about working for the sheriff's department." The trial court found the strike proper and not pretextual because counsel "thought that [Juror 7] was doing work for the sheriff's department."

Appellants' counsel shared with the court his concern and experience with jurors (or spouses of jurors) employed in certain jobs, such as insurance agents:

> Counsel for Appellants: Your Honor, I never put the relatives [sic] bank tellers and insurance agents[ ][o]n my juries[.] . . . If you're an insurance agent. Or if you're married to an insurance agent. Or if they're a bank teller or married to a bank teller. These are the most straight-laced, conservation [sic] people that, that you could find, in my opinion. And they will . . . always convict your client.

■ Finally, Appellants's counsel explained he struck Juror 93, a white woman, for two reasons. First, according to counsel, Juror 93 taught at a school that used to segregate students on the basis of race. Second, the juror's husband is an insurance agent. As the following exchange reveals, the trial court did not consult the State before finding Appellants' reason was pretextual:

> Counsel for Appellants: [Juror 93 is] a teacher at Patrick Henry [School], Your Honor, which was predominately—I think they allow black people to go there now but it was started as a racist response to desegregation, Patrick Henry was. It was an all white school which has recently—[t]hey allow black students there now. But it's generally not something—somebody I want. And on top of that, they have—
>
> The Court: That's pretextual. Go ahead and put your record on, though. Go ahead.
>
> Counsel for Appellants: Your Honor, I just don't think that somebody that works for a racist institution that's white should. be judging my client. I think that's just fraught with problems, Judge. And her husband's an insurance agent, one, one of the most conservative class of people that I—that I could think of, Judge.

The Court: Okay. Well, every one of those reasons is a stereotype. And I think if it's a stereotype it's pretextual.... I find that that was [ ] pretextual.

The reason Appellants' counsel offered to strike Juror 93 was in part race-neutral. Moreover, it would seem plausible for a black defendant to strike a potential juror who worked at a school that was perceived to be founded in response to desegregation. Although the juror's race is tangentially at issue, it is important to realize that the juror was struck, not because of her race, but because of her association with an organization which counsel perceived as having a history of practicing racial discrimination.

■ Racial prejudice has long been held to be a valid basis for striking a juror for cause. *See* S.C.Code Ann. § 14–7–1020 (Supp.2005) (requiring the trial judge to ask jurors whether they are related to either party, have any interest in the cause, have expressed or formed an opinion, or know of any bias or prejudice to either party). Beyond a challenge for cause, this court has held that "[t]he principal function of the peremptory strike is to allow for the removal of a juror in whom the challenging party perceives bias or prejudice, even where the juror is not challengeable for cause." *State v. Short,* 327 S.C. 329, 335, 489 S.E.2d 209, 212 (Ct.App.1997), *aff'd,* 333 S.C. 473, 511 S.E.2d 358 (1999). It follows, then, that perceived prejudice may serve as a basis for exercising a peremptory challenge. Because a juror's perceived bias (for whatever reason) lies at the core of virtually every peremptory challenge, courts should intervene only when it is demonstrated that the strike runs afoul of the Constitution.

■ In our judgment, neither of Appellants' explanations here was pretextual. Moreover, after counsel offered seemingly valid reasons for striking Juror 93, the trial court did not require the State to prove purposeful racial discrimination. Rather, the trial court required Appellants' counsel to prove that he did not purposefully discriminate on the basis of race. This was error.[4] Furthermore, just because the reason given

---

4. We do not suggest that counsel's perception of the Patrick Henry School has any validity. Perceptions and perceived biases—whether true or not—are at the heart of virtually every peremptory challenge. The striking of a juror based on perceptions of bias will generally be

for striking a juror may fit a stereotype does not necessarily mean the reason is pretextual.

In granting the State's *Batson* motion and quashing the first jury, the trial court erred.

## IV.

Early on, the trial court abandoned the *Purkett-Adams* procedure for a *Batson* motion. The trial court failed to require the State to carry its burden of establishing purposeful racial discrimination in the third step of the *Batson* procedure. The State urges us to excuse noncompliance with the third step of the *Batson* procedure because of Appellants' "pattern" of striking white jurors. As noted, we find no such pattern, and the trial court made no such finding.

▆▆▆ Appellants exercised only half of their allotted strikes. Appellants' first and sixth strikes were exercised against black women. In any event, the mere presence of a pattern would not justify a departure from the *Purkett-Adams* procedure. *See State v. Ford,* 334 S.C. 59, 66, 512 S.E.2d 500, 504 (1999) ("Although appellant exercised most of his strikes against white jurors, he did not strike every white juror.... [T]he fact that appellant used most of his challenges to strike white jurors is not sufficient, in itself, to establish purposeful discrimination."). Even the trial court acknowledged as much midway through the process. When the State argued that a strike by defense counsel was "in that same class of white persons who have been struck," the trial court correctly observed that a juror "can be in that class ... and [Appellants can] still have a valid reason for striking [that juror]." Nevertheless, the trial court found many race-neutral reasons advanced by Appellants pretextual without resorting to the third and final step where the ultimate burden of persuasion would have been imposed on the State.

upheld unless it is established that the reason for the strike is impermissibly based on race or gender. The *Batson* burden of proof framework as set forth in *Purkett–Adams* seeks to achieve a proper balance between a party's ability to peremptorily strike a potential juror while allowing the opponent of the strike to prove purposeful racial or gender discrimination.

To be sure, a trial court's finding of a suspect pattern of peremptory challenges may carry weight in the ultimate disposition of a *Batson* motion. But the mere claim or appearance that peremptory challenges fit into a pattern does not excuse the failure to follow the mandated three-step *Purkett–Adams* procedure.

This is illustrated by the State's use of peremptory challenges in the selection of the second jury. The State used four strikes, all against blacks. Appellants moved under *Batson* to quash the jury. Under the State's "pattern" theory, the trial court presumably would have been justified in dispensing with the third and final step (requiring Appellants to prove purposeful discrimination) and allowing the mere pattern of striking blacks to establish pretext and carry the motion in Appellants' favor. The State, however, provided specific race-neutral reasons for its strikes, and the trial court proceeded to the final step, requiring Appellants to prove purposeful discrimination.

For a *Batson* motion, the trial court must follow the procedure outlined in *Purkett* and *Adams*. We find our opinion in *State v. Smalls*, 336 S.C. 301, 307, 519 S.E.2d 793, 796 (Ct.App.1999) instructive. In *Smalls*, the defendant used nine of his ten peremptory challenges on white jurors. The State opposed these strikes and requested a *Batson* hearing. At the *Batson* hearing, the defendant argued he struck the white jurors because they looked at him in a mean, stern, and accusatory manner. Although the trial court admitted these reasons might be reasonable, it nevertheless determined they were pretextual. Importantly, it made this determination without requiring the State to prove the defendant engaged in purposeful racial discrimination. This court reversed the trial court's finding because it failed "to require the State to carry its burden to present evidence of pretext as prescribed by step three of the *Adams/Purkett* analysis." *Id.* at 309, 519 S.E.2d at 797. We similarly conclude the trial court erred when it abandoned the process mandated by *Purkett* and *Adams* and effectively placed a burden of *disproving* pretext and purposeful discrimination on Appellants.

## V.

The second jury was comprised of two black men, two white men, three black women, and five white women. Appellants

did not use any of their peremptory challenges, and the court forbade Appellants from striking those jurors it determined were improperly struck during the first jury selection. Conversely, the State used four peremptory challenges, all on black jurors. Appellants opposed the State's strikes and requested a *Batson* hearing. At the second *Batson* hearing, the trial court scrupulously adhered to the mandated *Batson* process and required Appellants to show purposeful racial discrimination after the State offered race-neutral explanations.

For example, the State stated it struck Juror 76, a black woman, because she has a brother who served time in prison. After hearing this explanation, which was race-neutral, the trial court followed the *Batson* process and required Appellants to show purposeful racial discrimination. Yet the strike was nothing more than a stereotype that those with family members who have served prison sentences are also unsavory—a guilt-by-association stereotype. Had the trial court held to the approach it took during the first *Batson* hearing, the State's strike would have been decreed "pretextual" and that would have been the end of it.

## VI.

We now address whether the error is reversible. Our case law dictates that even if the trial court commits error in granting the State's *Batson* motion, the error is reversible only if the second jury is comprised of jurors whom the trial court erroneously prohibited the defendant from striking based on *Batson*. *Adams,* 322 S.C. at 126, 470 S.E.2d at 373; *State v. Rayfield,* 357 S.C. 497, 504, 593 S.E.2d 486, 490 (Ct.App.2004), *cert. granted* (Mar. 3, 2005). A defendant has no right to a particular jury. *Adams,* 322 S.C. at 126, 470 S.E.2d at 373.

In *State v. Short,* 333 S.C. 473, 511 S.E.2d 358 (1999), our supreme court held that no actual prejudice need be shown to establish reversible error for the deprivation of a peremptory strike where properly struck jurors are seated on the second jury. *See also Ford,* 334 S.C. at 66, 512 S.E.2d at 504 (holding that reversal and granting of a new trial is a proper remedy where the trial court erred in finding defendant violated

*Batson* in striking certain jurors and any challenged juror was seated on the second jury).

 Three of the six jurors Appellants properly struck from the first jury were seated on the second jury. Appellants should have been permitted to strike all three of these jurors. One of these three served as an alternate and did not participate in the deliberations. Any error with regard to this juror was harmless. *State v. Ford*, 334 S.C. 444, 449, 513 S.E.2d 385, 387 (Ct.App.1999) ("Any Batson violation in regards to a possible alternate juror is harmless where an alternate was not needed for deliberations."). The remaining jurors, Jurors 78 and 93, were seated as regular members on the second jury. Because both jurors were seated on the second jury and participated in the deliberations that determined Appellants' guilt, the error is reversible.[5]

## CONCLUSION

We hold the trial court committed legal error. The trial court's handling of the first *Batson* hearing in effect placed the burden on Appellants to prove the absence of purposeful discrimination even after Appellants articulated race-neutral reasons for their strikes. Because jurors properly struck were seated on the second jury, which found Appellants guilty, the error is reversible.

**REVERSED.**

HEARN, C.J., concurs.

ANDERSON, J., concurring in result only in a separate opinion.

ANDERSON, J. (concurring in result only in a separate opinion).

I **VOTE** to **REVERSE** the convictions and sentences of Willie Cochran and Reggie James (collectively, Appellants) because of the error committed by the circuit judge in violat-

---

5. Although we need not find prejudice to reverse this error, prejudice may be found in jury's guilty verdict against Appellant James for the offense of malicious injury to personal property. The trial court set aside the guilty verdict, finding "no testimony" of vandalism.

ing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The Appellants were convicted of first degree burglary. Additionally, Appellant James was convicted of assault and battery of a high and aggravated nature. Appellants appeal from the trial court's finding that six of their ten peremptory challenges violated *Batson v. Kentucky*. Although Appellants offered race-neutral reasons for their peremptory challenges, the trial judge found their reasons were mere pretext to engage in purposeful racial discrimination. Appellants claim the trial judge erred in granting the State's *Batson* motion.

The conduct of a *Batson* hearing by a circuit judge is an intricate and labyrinthine trial procedure. Ofttimes, the circuit judge is presented with evidentiary conundrums emanating from the analysis of the factual and legal posture of the prospective juror. The body of law extant in regard to rulings made by a trial judge in a *Batson* hearing reveals luculently that the appellate court must give deferential treatment to the trial judge on review. The appellate court has the luxury of lengthy cogitation and rumination whereas the circuit judge rules in a trial setting not allowing for lengthy deliberation and delay.

## FACTUAL/PROCEDURAL BACKGROUND

During jury selection, Appellants, African–American men, used ten of their twenty peremptory challenges on two black women, three white men, and five white women. The State opposed Appellants' strikes and requested a *Batson* hearing. At the *Batson* hearing, the trial judge found the race-neutral reasons offered by Appellants for their peremptory challenges were mere pretext to exclude jurors on the basis of race. The judge granted the State's *Batson* motion, quashed the first jury, and drew a second one.

During the second jury selection, the State used four of its five peremptory challenges on a black man and three black women. Appellants opposed all four of the State's strikes and requested a *Batson* hearing. At this *Batson* hearing, the State offered race-neutral reasons for its peremptory challenges and the trial judge found the State's reasons were not pretextual. The trial judge denied Appellants' *Batson* motion

and impaneled the jury. The second jury was comprised of two of the six jurors Appellants struck from the first jury, which the trial judge found violated *Batson*. These two jurors participated in the deliberations and verdict.

## STANDARD OF REVIEW

In determining whether a party exercised strikes in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the appellate court must examine the totality of the facts and circumstances in the record surrounding the strikes. *State v. Shuler*, 344 S.C. 604, 545 S.E.2d 805 (2001). The trial judge's findings regarding purposeful discrimination in the exercise of peremptory strikes rest largely on evaluation of demeanor and credibility. *Southerland v. State*, 337 S.C. 610, 524 S.E.2d 833 (1999); *State v. Tucker*, 334 S.C. 1, 512 S.E.2d 99 (1999). Often the demeanor of the challenged attorney will be the best and only evidence of discrimination. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Shuler*, 344 S.C. at 615–16, 545 S.E.2d at 810. Furthermore, a strike must be examined in light of the circumstances under which it is exercised, including an examination of the explanations offered for other strikes. *Shuler*, 344 S.C. at 616, 545 S.E.2d at 810–11.

The judge's findings as to purposeful discrimination are entitled to great deference and will be set aside on appeal only if clearly erroneous. *State v. Haigler*, 334 S.C. 623, 515 S.E.2d 88 (1999); *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996). A finding is clearly erroneous if it is not supported by the record. *Shuler*, 344 S.C. at 619, 545 S.E.2d at 813. Where the record does not support the trial court's findings, the findings must be overturned. *State v. Ford*, 334 S.C. 59, 512 S.E.2d 500 (1999).

## LAW/ANALYSIS

Appellants contend the trial judge erred in finding their peremptory challenges violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## BATSON HEARING

The purposes of *Batson v. Kentucky* and its progeny are to protect the defendant's right to a fair trial by a jury of his peers, protect each venireperson's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of the justice system by seeking to eradicate discrimination in the jury selection process. *State v. Haigler*, 334 S.C. 623, 515 S.E.2d 88 (1999); *State v. Flynn*, 368 S.C. 83, 627 S.E.2d 763 (Ct.App.2006). It is unconstitutional to strike a juror on the basis of race or gender. *See J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venireperson on the basis of race. *State v. Shuler*, 344 S.C. 604, 545 S.E.2d 805 (2001); *Haigler*, 334 S.C. at 628, 515 S.E.2d at 90. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86, 106 S.Ct. 1712. A criminal defendant may object to race-based peremptory challenges on equal protection grounds regardless of whether the defendant and potential juror share the same race. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205 (1998). Both the State and defendants are prohibited from discriminatorily exercising a peremptory challenge of a prospective juror. *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

A hearing held pursuant to *Batson v. Kentucky* is trifurcated. First, when one party strikes a member of a cognizable racial group, the circuit court must hold a *Batson* hearing if the opposing party requests one. *Shuler*, 344 S.C. at 615, 545 S.E.2d at 810; *Haigler*, 334 S.C. at 629, 515 S.E.2d at 90. In order to raise and preserve a *Batson* issue, the opposing party must move for the hearing after the jury is selected but before it is sworn. *State v. Jones*, 293 S.C. 54, 358 S.E.2d 701 (1987). This hearing must be held out of the presence of the jury panel and the jury venire. *Id.* Second, the proponent of the strike, to successfully rebut the presumption of a *Batson* violation, must then offer a facially race-neutral explanation for the strike. *Haigler*, 334 S.C. at 629, 515 S.E.2d at 90–91.

Third, the opponent of the strike must show that the race-neutral explanation given was mere pretext. *Id.* at 629, 515 S.E.2d at 91; *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996).

## I. The Strike & *Batson* Request

The trial judge must hold a *Batson* hearing when members of a cognizable racial group are struck and the opposing party requests a hearing. *State v. Tucker,* 334 S.C. 1, 512 S.E.2d 99 (1999); *State v. Jones,* 293 S.C. 54, 358 S.E.2d 701 (1987). Any person, regardless of race, may set forth a *Batson* claim. *State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995). Both the defendant and the State can make a *Batson* motion. *See State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (1998).

*Batson* requires a hearing to allow a party the opportunity to make a prima facie showing of purposeful discrimination by challenging the other party's use of a peremptory strike, and if such discrimination is found, the proponent of the strike has the opportunity to present a neutral explanation for the strike. *Jones,* 293 S.C. at 56–57, 358 S.E.2d at 702–03.

## II. Explanation for the Strike

The proponent of the strike must offer a facially race-neutral explanation for the strike. *State v. Haigler,* 334 S.C. 623, 515 S.E.2d 88 (1999); *Adams,* 322 S.C. at 124, 470 S.E.2d at 372; *State v. Smalls,* 336 S.C. 301, 519 S.E.2d 793 (Ct.App. 1999). The explanation need not be clear, reasonably specific, or legitimate; it only needs to be race-neutral. *State v. Easler,* 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996), *aff'd as modified,* 327 S.C. 121, 489 S.E.2d 617 (1997). The reason is not required to be persuasive or plausible and may even be silly or superstitious. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *State v. Casey,* 325 S.C. 447, 481 S.E.2d 169 (Ct.App.1997). While merely denying a discriminatory motive is insufficient, the proponent of the strike need only present race-neutral reasons. *Casey,* 325 S.C. at 451–52, 481 S.E.2d at 171–72. At this stage of the inquiry, the issue is the facial validity of the explanation. In *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996), our supreme court adopted the procedure for the second step of the *Batson* analysis delineated in *Purkett v. Elem:*

"The second step of this process does not demand an explanation that is persuasive, or even plausible. . . . It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason·at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Adams,* 322 S.C. at 123–24, 470 S.E.2d at 371–72. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral. *State v. Tucker,* 334 S.C. 1, 512 S.E.2d 99 (1999); *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998).

South Carolina rejected the dual motivation doctrine in the *Batson* context. *Payton,* 329 S.C. at 59–60, 495 S.E.2d at 210. We adopted the "tainted" approach whereby a discriminatory explanation for the exercise of a peremptory challenge will vitiate other nondiscriminatory explanations for the strike. *Id.*

### A. Examples—Valid Reasons for Strike

1. *Demeanor.* Demeanor can be considered a racially neutral explanation. Counsel may strike venirepersons based on their demeanor and disposition. *See Matthews v. Evatt,* 105 F.3d 907 (4th Cir.1997) (holding the State is allowed to consider tone, demeanor, facial expression, and any other race-neutral factors when striking jurors); *State v. Wilder,* 306 S.C. 535, 413 S.E.2d 323 (1991) (two black males struck because they were late); *State v. Wright,* 304 S.C. 529, 405 S.E.2d 825 (1991) (stricken juror had disinterested attitude and demeanor); *State v. Smalls,* 336 S.C. 301, 309, 519 S.E.2d 793, 797 (Ct.App.1999) (finding no discriminatory intent inherent in defense counsel's explanation for striking jurors who appeared

to counsel as "looking in a 'mean,' 'stern' or 'accusatory' manner"); *State v. Guess,* 318 S.C. 269, 457 S.E.2d 6 (Ct.App. 1995) (declaring solicitor could strike venireperson because of demeanor observed during qualification; juror appeared to be "slow").

2. *Recipient of prior strike.* See *Sumpter v. State,* 312 S.C. 221, 439 S.E.2d 842 (1994) ("we find the solicitor's additional explanation that he struck Mr. Wright because he had struck him earlier in the week is also race neutral"); *Feddiman v. State,* 558 A.2d 278 (Del.1989) (determining solicitor's explanation was race-neutral where she struck a male juror and later struck a female juror with the same last name who lived at the same address because she was concerned that there would be some feeling against the State for striking the male juror).

3. *Prior jury service.* Recent prior jury service is a facially neutral reason for exercising a peremptory strike. *State v. Casey,* 325 S.C. 447, 481 S.E.2d 169 (Ct.App.1997).

4. *Prior criminal conviction.* A prior criminal conviction is a neutral reason to strike. *Casey,* 325 S.C. at 453 n. 2, 481 S.E.2d at 172 n. 2; *see also Sumpter,* 312 S.C. at 223–24, 439 S.E.2d at 844 (ruling solicitor's explanation for striking a black venireperson was racially neutral where prospective juror had a prior DUI involvement).

5. *Possible criminal record.* State v. Martinez, 294 S.C. 72, 362 S.E.2d 641 (1987).

6. *Prior prosecution by that particular Solicitor's office.* State v. Dyar, 317 S.C. 77, 452 S.E.2d 603 (1994); *Sumpter,* 312 S.C. at 223–24, 439 S.E.2d at 844.

7. *Acquaintance with the trial judge.* See *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996) (noting a potential juror's acquaintance with the trial judge is a valid reason for exercising a peremptory strike).

8. *Relationship with attorney.* An attorney's personal knowledge of and relationship with a prospective juror is a race-neutral reason for exercising a peremptory strike. *State v. Ford,* 334 S.C. 59, 512 S.E.2d 500 (1999).

9. *Relationship with law enforcement or pro-law enforcement attitude.* A potential juror's relationship with a law

enforcement official, or a potential juror's pro-law, enforcement attitude, is a race-neutral reason for exercising a peremptory strike. *Ford*, 334 S.C. at 65, 512 S.E.2d at 504; *cf. State v. Richburg*, 304 S.C. 162, 403 S.E.2d 315 (1991) (noting State's explanation that juror was anti-law enforcement was race-neutral).

10. *Knowledge of and association with defendant. State v. Johnson*, 302 S.C. 243, 395 S.E.2d 167 (1990).

11. *Unemployment.* Unemployment is a race-neutral reason for a strike. *State v. Green*, 306 S.C. 94, 409 S.E.2d 785 (1991).

12. *Place or type of employment.* It is legitimate to strike potential jurors because of their employment. *Ford*, 334 S.C. at 65, 512 S.E.2d at 504; *see also Adams*, 322 S.C. at 125, 470 S.E.2d at 372 (finding potential juror's employment as a court reporter is a valid reason for exercising a peremptory strike).

13. *"General instability".* See *State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991)(indicating that Solicitor's reasons for striking black juror were racially neutral and were not pretext for discrimination where Solicitor stated he struck juror because of her "general instability," in that she had changed employment several times after relatively short periods of employment, was unmarried mother of two-year-old, and was still living at her parents' home, and juror admitted on voir dire that she had seen outspoken advocate of defendant discussing his case on television).

### B. Examples—Invalid Reasons for Strike

1. *Desire to seat other venirepersons who have not yet been presented.* See *State v. Hicks*, 330 S.C. 207, 210, 499 S.E.2d 209, 211 (1998) (stating black murder defendant who exercised nine of his peremptory strikes to remove white prospective jurors and one peremptory strike to remove black prospective juror from panel failed to satisfy requirement of *Batson* that he offer race-neutral explanation for his exercise of strikes against two of those white prospective jurors; defendant explained he struck those jurors "to reach some jurors further down the list," but he offered no explanation as to which jurors he was attempting to seat or why other jurors were more desirable than the two in question); *State v.*

*Grandy,* 306 S.C. 224, 411 S.E.2d 207 (1991) (emphasizing that solicitor failed to articulate racially neutral explanation in his assertion he excluded prospective black juror because he wanted to seat other venirepersons; solicitor gave no reason why it was desirable to have other venirepersons seated, as opposed to the black juror; effect was same as if no reason was given for striking black juror).

2. *Generalization about an entire group. See Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998) (ruling that striking white juror because she was a "redneck" was not valid race-neutral reason on its face; thus, strike was facially discriminatory and violated *Batson;* term "redneck" was racially derogatory term applied exclusively to members of white race, and term stereotyped subgroup of white race without any evidence that each member of group was actually possessed of bias or prejudice).

3. *Potential juror who "shucked and jived" to the microphone. See State v. Tomlin,* 299 S.C. 294, 299, 384 S.E.2d 707, 710 (1989) ("The trial court failed to inquire into or comment on the prosecutor's explanation that the juror was struck because he 'shucked and jived.' The use of this racial stereotype is evidence of the prosecutor's subjective intent to discriminate and clearly violates the mandates of *Batson.*").

4. *Racial stereotypes. See Tomlin,* 299 S.C. at 298–99, 384 S.E.2d at 710 (noting prosecutor stated he struck Juror, a forty-three-year-old black woman, because she walked slow, talked low and might not be able to withstand trial; rather than inquiring into legitimacy of this explanation, trial court suggested juror had lack of education, was extremely sluggish and would be a "filler" if seated on the jury; supreme court concluded use of such racial stereotypes violates *Batson* ).

### III. Argument of Mere Pretext

Once a race-neutral explanation is given, the opponent of the strike must show the explanation was mere pretext to engage in purposeful racial discrimination. *State v. Short,* 333 S.C. 473, 511 S.E.2d 358 (1999); *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996). Pretext generally will be established by demonstrating that a similarly situated member of another race was seated on the jury. *State v. Haigler,* 334 S.C. 623,

515 S.E.2d 88 (1999); *Adams,* 322 S.C. at 123, 470 S.E.2d at 371. Under some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, at this third step of the analysis, that the explanation was mere pretext even without a showing of disparate treatment. *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998).

The uneven application of a neutral reason does not automatically result in a finding of invidious discrimination if the strike's proponent provides a race-neutral explanation for the inconsistency. *See State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995) (finding State provided a racially neutral explanation for why Solicitor did not strike juror with similar characteristics to one previously stricken). Under this prong, persuasiveness of the justification becomes relevant. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The opponent of the strike carries the burden of persuading the circuit court the challenged party exercised strikes in a discriminatory manner. *Adams,* 322 S.C. at 124, 470 S.E.2d at 372; *see also Haigler,* 334 S.C. at 629, 515 S.E.2d at 91 (stating burden of persuading court a *Batson* violation has occurred remains at all times on opponent of strike); *State v. Smalls,* 336 S.C. 301, 308, 519 S.E.2d 793, 796 (Ct.App.1999) ("At this third step, the burden returns to the party challenging the strike to establish that the explanation is mere pretext."). The ultimate question the trial court resolves under this prong is whether the movant has met his burden in demonstrating purposeful discrimination. *State v. Casey,* 325 S.C. 447, 481 S.E.2d 169 (Ct.App.1997).

A racially neutral reason can be negated by showing that the party created a pretext for purposeful discrimination by applying his allegedly racially neutral standard in a discriminatory manner. *State v. Easler,* 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996), *aff'd as modified,* 327 S.C. 121, 489 S.E.2d 617 (1997). In *State v. Oglesby,* 298 S.C. 279, 379 S.E.2d 891 (1989), the supreme court found a *Batson* violation when the State struck three black women because they were patients of a doctor who was a defense witness, but seated a white woman who was a patient of the same doctor. The court held the State's race-neutral reason for striking the three black women

was mere pretext in light of the fact that it seated a similarly situated white woman. *Id.*

The determination of whether the minimum quantum of evidence has been produced under this prong is flexible, for the trial court's ruling turns on an examination of the totality of the facts and circumstances in the record, including the credibility and demeanor of the strike's proponent, and the plausibility of a neutral, but otherwise unpersuasive, reason. *Casey,* 325 S.C. at 452, 481 S.E.2d at 172.

In deciding whether the opponent of a strike has carried the burden of persuasion, a court must undertake a sensitive inquiry into the circumstantial and direct evidence of intent. *Haigler,* 334 S.C. at 629, 515 S.E.2d at 91. A strike must be examined in light of the circumstances under which it is exercised, including an examination of the explanations offered for other strikes. *Id.*

## IV. After *Batson* Motion is Granted

If the trial judge finds the opposing party has established a prima facie case of purposeful discrimination and that the proponent of the strike has failed to give race-neutral reasons for the contested strikes, the process of selecting a jury shall start over. *See State v. Jones,* 293 S.C. 54, 358 S.E.2d 701 (1987). Thus, "if the circuit court finds a juror has been struck in violation of *Batson,* our supreme court has mandated that the circuit court strike the entire jury and begin the jury selection process de novo." *State v. Heyward,* 357 S.C. 577, 580, 594 S.E.2d 168, 169 (Ct.App.2004). Members of the tainted jury and all persons who were struck may be placed back in the jury venire. *Jones,* 293 S.C. at 58, 358 S.E.2d at 704.

Once a juror has been unconstitutionally stricken, the jury selection process relative to that juror is tainted. *State v. Lewis,* 363 S.C. 37, 609 S.E.2d 515 (2005). If the trial court chooses to reseat the improperly stricken juror, the striking party may not use a peremptory strike to remove that juror from the panel a second time. *Id.* Therefore, during the subsequent jury selection, the trial judge may prohibit the party who violated *Batson* from striking a juror who was

improperly struck during the previous jury selection. *Id.*; *State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995).

## V. *State v. Adams* and its Progeny

In *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996), during voir dire, the defense exercised its peremptory challenges upon seven Caucasians. The prosecution requested a *Batson* hearing. The trial judge found a *Batson* violation based on his conclusion that defense counsel's explanations for two of the strikes—that one of the prospective jurors was a court reporter, knew too much about the process, and looked "too intelligent," and that another prospective juror knew the trial judge—were not racially neutral. On appeal, our supreme court ruled the trial judge erred in finding a *Batson* violation. The court concluded:

> These explanations are racially neutral, legitimate reasons for exercising peremptory strikes. A potential juror's acquaintance with the trial judge is a perfectly valid explanation for the exercise of a peremptory strike. The explanation that one juror looked "too intelligent" could be viewed as suspect but for the fact that the *primary* explanation given for the strike was that the potential juror was employed as a court reporter and may have known "too much" about the judicial process. Under our past precedents, the judge should have found these reasons racially neutral and legitimate and allowed the prosecution an opportunity to show that the explanations were pretextual. Under the new *Purkett* standard, the judge also should have allowed the inquiry to proceed to the third step, because the explanations given were facially race-neutral.
>
> The Record contains very little information that would allow this Court to determine whether defense counsel allowed to be seated black jurors who were similarly situated to the white jurors who were struck. The Record lacks this information because the trial judge did not allow the *Batson* hearing to proceed to the third stage. Without more information in the Record, we conclude that the trial court erred in finding a *Batson* violation and in quashing the original jury.

*Id.* at 125, 470 S.E.2d at 372.

The court of appeals, in *State v. Easler*, 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996), *aff'd as modified*, 327 S.C. 121, 489

S.E.2d 617 (1997), found a *Batson* violation when the defendant struck a black man because of his age, but seated a white man within the same age bracket. This court held the defendant's race-neutral reason for striking the black man was negated by the fact he seated several white venirepersons in the same age bracket. *Id.*

In *Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205 (1998), respondent exercised all of his peremptory strikes to remove prospective white jurors. Petitioner requested a *Batson* hearing. Respondent's counsel offered the following reason for striking Juror 18:

"The juror number 18, she is known as [a] very opinionated person, your Honor, who expresses herself. We knew if she got on that jury she was not gone [sic] budge one way or the other, that she was gone [sic] get her way or no way. That was our opinion from what we had learned. Her family has—Mr. Lanier has talked about the number of people in trouble. She herself has not had any problems but she comes from a family that's had some problems with the law and she's kind of what we refer to as a redneck variety, so to speak, and that was the reason we struck her and, as you know, your Honor, I was concerned with her family, whether she had any problems with me or the law because some members of her family might have problems with the law."

*Id.* at 55, 495 S.E.2d at 208. After hearing respondent's reason for striking the juror, the trial court declared the reason race-neutral and found respondent had not violated *Batson.* On appeal, the supreme court ruled the trial court erred in finding the reason offered to strike Juror 18 to be race-neutral on its face. The court explicated: "The term 'redneck' is a racially derogatory term applied exclusively to members of the white race. The use of the term 'redneck' is not a valid race-neutral reason to strike a potential juror, and therefore, the strike is facially discriminatory and violates *Batson.*" *Id.* at 55–56, 495 S.E.2d at 208 (footnote omitted).

In *State v. McCray*, 332 S.C. 536, 506 S.E.2d 301 (1998), appellant, who is black, was tried with two co-defendants, Roger Dewitt (Bill) Prince and Charlie Dorn Smith, who are white. Appellant argued his co-defendants violated *Batson* by excluding black jurors from the venire because of their race.

The judge denied appellant's *Batson* motion. The supreme court remanded the matter to the trial court for the purpose of conducting a *Batson* hearing. On remand, co-defendant Prince candidly stated, due to the passage of time, he did not remember exactly why he had struck the black jurors at issue but, referring to his notes, thought he struck Juror #112 because she had two cousins who were sheriffs in New York and Juror #26 because he had a friend who worked for the sheriff's department. Co-defendant Smith stated he did not want anyone with connection to law enforcement on the jury. Consequently, he struck Juror #9, whose friend worked for SLED, and Juror #61, whose cousin worked for the sheriff's department.

Appellant argued the stated reasons for striking the four black jurors were pretextual because the co-defendants did not strike three white jurors who had similar connections to law enforcement. The trial judge concluded the stated reasons for striking the four black jurors were not pretextual. The supreme court agreed finding the record from the jury voir dire indicated the three white jurors who were seated on the jury were not similarly situated to the four black jurors who were struck from the jury. While the black jurors had relatives or friends who, at the time of trial, were employed in law enforcement, the relatives or friends of the white jurors were no longer employed in law enforcement. The white jurors did not have the same relationship to law enforcement as the black jurors. The court determined appellant failed to meet his burden of establishing the co-defendants' stated reasons for striking the black jurors were pretextual. Thus, the court ruled the trial judge's findings were supported by the evidence and should be affirmed.

In *State v. Tucker*, 334 S.C. 1, 512 S.E.2d 99 (1999), all of the six peremptory strikes used by the State were used against blacks. Appellant contended that similarly situated white jurors were not struck. Specifically, appellant questioned the striking of Juror Bonaparte. On appeal, the supreme court articulated:

The solicitor stated he struck Juror Bonaparte because he was argumentative and his answers were "dogmatic." Further, Juror Bonaparte had referred to his brother's murder and the former solicitor's refusal to prosecute. The solicitor

stated he was afraid this juror harbored some resentment against the solicitor's office which might affect his deliberations. The trial court agreed that Juror Bonaparte was argumentative. The trial judge even pointed out how the juror had been argumentative with him. Appellant has failed to point out a white juror similarly situated to Juror Bonaparte who was not struck. Furthermore, counsel may strike venirepersons based on their demeanor and disposition. *State v. Wilder*, 306 S.C. 535, 413 S.E.2d 323 (1991). *Id.* at 8, 512 S.E.2d at 102.

In *State v. Short*, 333 S.C. 473, 511 S.E.2d 358 (1999), the defense, during jury selection, used eight peremptory challenges, all against white venirepersons. On the State's motion, the trial judge conducted a *Batson* hearing. The judge ruled two of Short's challenges were racially motivated and, thus, violative of *Batson*. The two contested strikes were exercised against Jurors # 39 and # 13. Defense counsel explained he challenged # 39 because her husband was an assistant manager at "Carl's" and "just about every term of court, Carl's has a case in court, either somebody shooting in the parking lot, bad checks, one thing and another." *Id.* at 476, 511 S.E.2d at 359. As to # 13, counsel explained the juror was employed at the same business where counsel's brother was the manager and "maybe because he's a manager, he's made somebody mad and they would hold it against my client." *Id.* at 476, 511 S.E.2d at 359–60. The trial court found the defense's explanations for its exercise of peremptory strikes were not racially neutral absent a showing of actual bias or prejudice on the part of Jurors 39 and 13. The trial court set aside the jury panel. The judge then directed that the jury be re-struck and that Short would not be permitted to challenge the two venirepersons previously stricken in violation of *Batson*. During the second jury selection, both Jurors 39 and 13 were seated. Short requested a bench conference immediately after the jury selection and thereafter objected to the seating of the two jurors. On appeal, the supreme court concluded Short's explanations were facially race-neutral and the State failed to show mere pretext. Thus, the trial judge erred in ruling the strikes violated *Batson*.

In *State v. Ford*, 334 S.C. 59, 512 S.E.2d 500 (1999), during jury selection, appellant exercised thirteen peremptory chal-

lenges when selecting the jury and the two alternates. Twelve of the thirteen jurors struck were white. On the State's motion, the trial court conducted a *Batson* hearing. The trial judge noted he was most concerned with the strikes exercised against Jurors # 95 and # 126. Defense counsel claimed he struck Juror # 95 "because she works at a local hardware store which is owned by a former longtime Dillon County Magistrate and his employees are exposed to pro-prosecution ideas since many law enforcement personnel regularly visit the store." *Id.* at 62, 512 S.E.2d at 502. He struck Juror # 126 for the following reason:

"[W]e did not feel comfortable.... He's assistant manager of Tomlinsons on Main Street. My wife helped me select the juror and as a teenager she worked there and he worked there at the time. And we feel that he would feel uncomfortable. And, in fact, last September, when I had a death penalty case, he sold me a pair of shoes to wear in court for that trial. So we thought he would be uncomfortable sitting on the jury. We didn't know which way he might go. But it could certainly have a bearing on that. And whenever I go into Tomlinsons we all joke and talk. Of course, we have not talked about this particular trial, but every time I go in there he's asking me about court, different cases going on. And I, certainly, would not want him to be on one of my juries because I wouldn't feel comfortable."

*Id.* at 62–63, 512 S.E.2d at 502. The trial judge ruled appellant had violated *Batson*. According to the judge, because appellant exercised all but one of his strikes against prospective white jurors, " '[t]he cumulative effect is a lot worse picture than looking at it on an individual basis.' " *Id.* at 63, 512 S.E.2d at 503. The trial judge quashed the jury and ordered selection of a new jury. Further, the judge ruled appellant could not strike Juror # 126 during the second jury selection. Both Jurors # 95 and # 126 were seated on the second jury.

On appeal, appellant alleged the judge erred in finding his strikes violated *Batson*. The supreme court illuminated:

In this case, appellant's explanations were facially race-neutral. In particular, with regard to Juror # 126, an attorney's personal knowledge of and relationship with a prospective juror is a race-neutral reason. *See State v.*

*Adams,* [322 S.C. 114, 470 S.E.2d 366 (1996) ] (a potential juror's acquaintance with the trial judge is a valid reason for exercising a peremptory strike). With regard to Juror # 95, a prospective juror's employment in a hardware store owned by a longtime magistrate where local law enforcement officials gather is a race-neutral reason. *State v. Adams, supra* (a potential juror's employment as a court reporter is a valid reason for exercising a peremptory strike); *State v. Green,* [306 S.C. 94, 409 S.E.2d 785 (1991) ] (unemployment is a race-neutral reason). Further, it is legitimate to strike potential jurors because of their employment. *State v. Adams, supra; State v. Green, supra.* Also, it is legitimate to strike a potential juror because she or he has a relationship with a law enforcement official or because she or he is pro-law enforcement. *Compare with State v. Richburg,* 304 S.C. 162, 403 S.E.2d 315 (1991) (State's explanation that juror was anti-law enforcement was race-neutral).

Further, these explanations are not so fundamentally implausible as to constitute mere pretext without some showing of disparate treatment. The State offered no evidence of pretext, as required by step three of the *Adams/Purkett* analysis. Although appellant exercised most of his strikes against white jurors, he did not strike every white juror. Instead, some white jurors were accepted by appellant and were placed on the first jury. Further, the fact that appellant used most of his challenges to strike white jurors is not sufficient, in itself, to establish purposeful discrimination. *See State v. Tucker,* 334 S.C. 1, 512 S.E.2d 99 (1999) (no *Batson* violation where the State exercised all six of its peremptory strikes against blacks because the explanations were race-neutral); *State v. Casey,* 325 S.C. 447, 481 S.E.2d 169 (Ct.App.1997) (no *Batson* violation where solicitor had neutral reasons for all five strikes used against males). Thus, this record fails to support the trial judge's finding of a *Batson* violation. Accordingly, the trial judge erred in ruling these strikes violated *Batson,* and appellant was denied his right to exercise his peremptory challenges.

*Id.* at 65–66, 512 S.E.2d at 503–04.

In *State v. Haigler,* 334 S.C. 623, 515 S.E.2d 88 (1999), the jurors seated in appellant's case included three white men, five

white women, one black man, and three black women. The two alternate jurors, who did not participate in deliberations, were black men. The prosecutor exercised peremptory challenges against four black women and one white man. Appellant is a black man. Appellant raised a *Batson* challenge to the prosecutor's decision to strike the black women as prospective jurors. The prosecutor stated he struck the first black woman because she was very young and had gone to school with appellant. He struck the second black woman because she had a shoplifting conviction. He struck the fourth black woman because she was unemployed, which meant she had an insufficient stake in the community. The trial judge ruled all those were race-neutral reasons for the strikes. The prosecutor declared he struck the third black woman, Tammy Berry, for two reasons: "One reason is that she had prior jury service on a criminal sexual conduct and came back with a not guilty verdict. That wasn't the main reason. The main reason was that Larry Smith who is a key witness here knows this person, says she is a good person but she is very high strung, a critical type person, opinionated and he didn't feel like she could deliberate well with the other jurors, would be a polarizing individual." *Id.* at 627, 515 S.E.2d at 90 (footnote omitted).

Appellant argued the first reason given by the prosecutor was pretextual because the prosecutor had accepted Gerald Smith, a white man, who also had returned a not guilty verdict in a criminal case. Smith had sat on a criminal jury eighteen to twenty years earlier, and he thought he remembered that the verdict in the domestic shooting case was not guilty. Berry had sat on a criminal jury five years earlier, and definitely remembered that the verdict in the rape case was not guilty. Appellant argued the second reason given by the prosecutor was pretextual because Berry did not stand up during voir dire to say she knew Larry Williams when venire members were asked whether they knew law enforcement officers involved in the case. The trial judge denied the *Batson* motion, ruling both the prosecutor's reasons were racially neutral and not pretextual.

On appeal, the supreme court concluded appellant did not carry his burden in proving the prosecutor engaged in pur-

poseful discrimination during the jury selection process. The court found:

[T]he prosecutor's primary reason for striking Berry was because the lead detective in appellant's case knew her to be a high-strung, critical person who would be a polarizing force on the jury. That was a race-neutral reason for the strike. *Cf. State v. Richburg*, 304 S.C. 162, 403 S.E.2d 315 (1991) (officer's apparent knowledge that venireperson had anti-law enforcement bias may be race-neutral reason for strike); *State v. Smith*, 321 S.C. 471, 469 S.E.2d 57 (Ct.App. 1996) (trooper's personal contact with venirepersons and belief they may hold anti-law enforcement bias may be race-neutral reason for strike). Berry's failure to reveal during voir dire that she was acquainted with the lead detective is irrelevant to the *Batson* analysis, which focuses upon a party's knowledge of a potential juror and reason for exercising a peremptory challenge.

. . . .

. . . [W]e do not believe the prosecutor's second reason was fundamentally implausible or pretextual. First, Berry and Smith were not similarly situated in that Berry had served on a criminal jury five years earlier and definitely remembered the verdict, while Smith had served on a criminal jury some twenty years earlier and was unsure of the verdict. Second, and more importantly, the circumstances of the jury selection process indicate the prosecutor did not strike potential jurors for racially motivated reasons. While the prosecutor struck four black prospective jurors, he seated four black people on the regular jury and two black alternate jurors. *See State v. Dyar*, [317 S.C. 77, 452 S.E.2d 603 (1994) ] (composition of jury panel is one factor to consider in *Batson* analysis); *State v. Guess*, 318 S.C. 269, 457 S.E.2d 6 (Ct.App.1995) (finding no purposeful discrimination, in part because jury included six members of the minority allegedly offended); *State v. Watts*, 320 S.C. 377, 465 S.E.2d 359 (Ct.App.1995) (finding no purposeful discrimination, in part because jury was composed of eight white people and four black people, and prosecutor had struck two white people).

Similarly, the record contains no indication the prosecutor's stated reasons for striking the other three black wom-

en—that one was too young and knew appellant, one had a criminal conviction, and one was unemployed—were motivated by purposeful discrimination. *See State v. Ford,* [334 S.C. 59, 512 S.E.2d 500 (1999) ] (lack of employment or place or type of employment may be race-neutral reason for strike); *State v. Johnson,* 302 S.C. 243, 395 S.E.2d 167 (1990) (potential juror's knowledge of and association with defendant may be race-neutral reason for strike); *State v. Dyar, supra* (past prosecution of potential juror by particular solicitor's office may be race-neutral reason for strike); *State v. Green,* 306 S.C. 94, 409 S.E.2d 785 (1991) (unemployment may be race-neutral reason for a strike); *State v. Martinez,* 294 S.C. 72, 362 S.E.2d 641 (1987) (unemployment and possible criminal records may be race-neutral reasons for a strike).

*Id.* at 630–32, 515 S.E.2d at 91.

In *State v. Smalls,* 336 S.C. 301, 519 S.E.2d 793 (Ct.App. 1999), the appellant used nine of ten peremptory strikes to remove white jurors from the venire. The State posited a *Batson* objection, alleging the defense utilized the strikes in an intentionally discriminatory manner. The trial court then asked defense counsel to give race-neutral reasons for the strikes, to which she responded, "A lot of this was just looking at the potential jurors and seeing—if they don't look at me or if they look with a mean, stern look." *Id.* at 304, 519 S.E.2d 793, 519 S.E.2d at 794. She further explained that she believed those persons who tended to look away or glare were not open-minded, and stated that such veniremen "have already made their minds up, and I don't want them on the jury." *Id.* While the trial judge admitted counsel's stated explanation "possibly could be reasonable," he determined it was not sufficiently race-neutral. *Id.* As a result, the court returned the jury panel to the pool, and a new jury was drawn and sworn. The new panel contained four members originally struck by the defense.

On appeal, the court of appeals determined:

We discern no discriminatory intent inherent in the defendant's explanation. We therefore find the reason asserted by Smalls for his peremptory strikes, that the jurors were either refusing to look or looking in a "mean," "stern"

or "accusatory" manner, was facially race-neutral, even if perhaps suspect. *See State v. Tucker*, [334 S.C. 1, 512 S.E.2d 99 (1999) ]; *State v. Wilder*, 306 S.C. 535, 413 S.E.2d 323 (1991) (counsel may strike venire persons based on their demeanor and disposition). The trial court erred, therefore, in failing to require the State to carry its burden to present evidence of pretext as prescribed by step three of the *Adams/Purkett* analysis. *See Ford* at 66, 512 S.E.2d at 504 (finding opponent of strikes failed to offer evidence of pretext as required by step three of the analysis); *Adams*, 322 S.C. at 124, 470 S.E.2d at 372 (stating that "[u]nder some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, at the third step of the analysis, that the explanation was mere pretext") (emphasis added); *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771 (opponent of strike bears ultimate burden of persuasion regarding racial motivation); *cf. Payton v. Kearse*, 329 S.C. at 55–56, 495 S.E.2d at 208 ("redneck" is not race-neutral on its face so there is no need to reach the third step of the analysis). *Id.* at 309, 519 S.E.2d at 797.

In *State v. Wright*, 354 S.C. 48, 579 S.E.2d 538 (Ct.App. 2003), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005), the State exercised peremptory challenges to strike three black jurors. Wright objected and requested a *Batson* hearing. Specifically, as to Juror 29, the State explained that although she was a bilingual translator, she had a heavy accent, and the State was unsure as to her command of the English language. Wright then responded the State did not strike Juror 123, a white German woman who had a "huge accent." *Id.* at 51, 579 S.E.2d at 540. The State countered that it was under the impression Juror 123 worked in communications at the fire department and would thus have a better grasp of the English language. Based on this dialogue, the circuit court found the State's peremptory strike did not violate *Batson*, and the jury was seated and sworn.

On appeal, Wright claimed the circuit court erred by allowing the State to exercise peremptory challenges in a racially discriminatory manner in violation of *Batson*. The court of appeals held:

Viewing the record in light of our standard of review, the circuit court's conclusion was not clearly erroneous. Although we recognize Juror 29 and Juror 123 are similarly situated in that they both have foreign accents, the State distinguished them by their observable command of the English language, as well as what the State perceived their occupations to be. These were proper race-neutral considerations. *See Matthews v. Evatt,* 105 F.3d 907, 918 (4th Cir.1997) (holding the State is allowed to consider tone, demeanor, facial expression, and any other race-neutral factors when striking jurors). Thus, the circuit court did not err.

*Id.* at 56, 579 S.E.2d at 542.

In *State v. Flynn,* 368 S.C. 83, 627 S.E.2d 763 (Ct.App.2006), after the jury was qualified, defense counsel raised a *Batson* challenge based on the fact that the State used all its strikes to remove black females from the jury. The State presented its explanations for the strikes. As to Juror 21, the State asserted: " '[She] is a Head Start director. I view that as a very liberal job and that's the reason why I struck her.' " *Id.* at 49, 579 S.E.2d 538. Defense counsel took exception to the State's reasons for striking Juror 21. The State then expounded on its reasons for striking her: " 'Your Honor, I believe that is a social welfare kind of program, and as director she is liberal in nature. It's a liberal type of attitude and job, and that is why I struck her.' " *Id.* at 50, 579 S.E.2d 538. The trial court ruled that, given the nature of the case and progress of the trial to that point, it would be possible to consider a Head Start director as an improper juror. The court stated: " 'I'm going to conclude that it's race neutral, particularly in view of the fact that the Defendant is a young white Caucasian. That particular juror is female, African-American. I conclude that's race-neutral.' " *Id.* at 50, 579 S.E.2d 538.

On appeal, Flynn argued the trial court erred in not finding the State violated *Batson* in regard to its treatment of Juror 21. He asserts the State advanced a racial stereotype to justify striking Juror 21. The court of appeals determined: "[T]he State asserted that due to her employment, it believed Juror 21 was 'liberal.' As Flynn has offered no evidence other than a conclusory assertion of racial motivation, we find the

trial court did not err in failing to find a *Batson* violation."
*Id.* at 51, 579 S.E.2d 538.

## VI. *Batson* Violation/Remedy

Any deviation from the mandated and recognized *Batson* procedure is **NOT** a mere peccadillo, but is an egregious judicial corrigendum. Notwithstanding error, the more pertinent query is whether reversal is obligatory.

*State v. Adams* edifies in regard to the remedy for a *Batson* violation:

Nevertheless, we do not reverse based on this error. We have not yet ruled on the proper remedy for a trial judge's error in *finding* a *Batson* violation and quashing the jury. This situation is fundamentally different from one in which the trial judge improperly upholds racially discriminatory peremptory challenges. When the trial court improperly upholds such challenges, there has been a violation of the stricken jurors' Fourteenth Amendment equal protection rights. Additionally, if the prosecution is the party improperly exercising peremptory challenges that the trial judge upholds, the defendant has been denied a right to a fair and impartial jury of his peers. However, where, as here, the trial judge *improperly* quashes a jury panel, no juror's equal protection rights have been violated. An appellate determination that a judge erred in finding a *Batson* violation means the obvious: No *Batson* violation occurred, and there was, therefore, no denial of anyone's equal protection rights. Moreover, we see no way in which the defendant's fair trial rights were violated. A defendant has no right to trial by any particular jury. *E.g., State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990). When the trial judge quashed the first jury panel, the parties selected a new jury. Adams has voiced no complaints about the new jury. We find that no prejudice resulted from the judge's error.

*Id.* at 125–26, 470 S.E.2d at 372–73.

Unlike in *Adams,* the Appellants in the instant case have complained about the new jury.

In *State v. Short,* 333 S.C. 473, 511 S.E.2d 358 (1999), after ruling the trial court erred in finding a *Batson* violation and quashing the first jury, the supreme court inculcated:

After finding error in the trial judge's *Batson* ruling, the Court of Appeals went on to find reversible error because Short's right to exercise peremptory challenges against the two jurors was denied him. The Court of Appeals found no showing of prejudice was required because there was no way to determine with any degree of certainty whether Short's right to a fair trial by an impartial jury was abridged. 327 S.C. at 335, 489 S.E.2d at 212.

In finding reversible error, the Court of Appeals adopted the analysis of *United States v. Annigoni*, 96 F.3d 1132 (9th Cir.1996), requiring no showing of actual prejudice to reverse for infringement of the federal statutory right to exercise a peremptory challenge. This rule is consistent with that of a clear majority of state courts as well. *See, e.g., Mason v. State*, 536 So.2d 127 (Ala.Crim.App.1988); *State v. Huerta*, 175 Ariz. 262, 855 P.2d 776 (1993); *Hagerman v. State*, 613 So.2d 552 (Fla.Dist.Ct.App.1993); *People v. Bennett*, 282 Ill.App.3d 975, 218 Ill.Dec. 574, 669 N.E.2d 717 (1996); *State v. Kauhi*, 86 Hawai'i 195, 948 P.2d 1036 (1997); *Spencer v. State*, 20 Md.App. 201, 314 A.2d 727 (1974); *Commonwealth v. Roche*, 44 Mass.App. 372, 691 N.E.2d 946 (1998); *People v. Schmitz*, 231 Mich.App. 521, 586 N.W.2d 766 (1998); *Arenas v. Gari*, 309 N.J.Super. 1, 706 A.2d 736 (1998); *Fuson v. State*, 105 N.M. 632, 735 P.2d 1138 (1987); *City of Dickinson v. Lindstrom*, 575 N.W.2d 440 (N.D.1998); *Baker v. English*, 324 Or. 585, 932 P.2d 57 (1997); *Commonwealth v. Ingber*, 516 Pa. 2, 531 A.2d 1101 (1987); *Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim.App. 1991); *State v. Ramos*, 211 Wis.2d 12, 564 N.W.2d 328 (1997); *Westcom v. Meunier*, 164 Vt. 536, 674 A.2d 1267 (1996); *Wardell v. McMillan*, 844 P.2d 1052 (Wyo.1992).

To the contrary, however, there is precedent of this Court indicating a showing of actual prejudice is required to find reversible error in the denial of the right to exercise a peremptory challenge. In *State v. Plath*, 277 S.C. 126, 284 S.E.2d 221 (1981), *overruled on other grounds, State v. Collins*, 329 S.C. 23, 495 S.E.2d 202 (1998), we concluded the defendant failed to show prejudice from the denial of a peremptory challenge where there was ample opportunity to examine the juror on voir dire and there was no showing of

any bias or lack of impartiality on the part of the juror. Accordingly, we found no reversible error.

We now overrule *Plath* and adopt the majority rule that no showing of actual prejudice is required to find reversible error for the denial or impairment of the right to a peremptory challenge. We note that *Plath* is distinguishable from our other decisions discussing "prejudice" in the denial of a peremptory challenge where the issue actually turned on whether the complaining party had established he was denied the right to exercise a peremptory challenge. Where such a denial was established, we implicitly applied the majority rule discussed above and reversed without a showing of actual prejudice. *See State v. Anderson,* 276 S.C. 578, 281 S.E.2d 111 (1981) (prejudice in wrongfully limiting number of peremptory challenges where defendant exercised all permitted); *Moore v. Jenkins,* 304 S.C. 544, 405 S.E.2d 833 (1991) (failure to use side-to-side procedure in allowing peremptory challenges in a case with multiple defendants prejudiced the plaintiff as a matter of law). In cases finding no prejudice, on the other hand, we actually determined the complaining party had not established the denial of a peremptory challenge. *See Laury v. Hamilton,* 317 S.C. 503, 455 S.E.2d 173 (1995) (no prejudice where party received greater number of strikes than that to which he was entitled under side-to-side method); *State .v. Holland,* 261 S.C. 488, 201 S.E.2d 118 (1973) (no prejudice in limiting number of peremptory challenges where defendants used fewer than allowed). Before reversible error can be found, the complaining party must of course establish the denial of his right to exercise a peremptory challenge.

*Short,* 333 S.C. at 476–78, 511 S.E.2d at 360–61 (footnote omitted).

Thereafter, in *State v. Ford,* 334 S.C. 59, 512 S.E.2d 500 (1999), the supreme court explicated:

The State argues, even if the trial judge erred in finding a *Batson* violation, the error was harmless because appellant failed to show the second jury was not impartial. This Court recently addressed this precise issue. *See State v. Short,* 333 S.C. 473, 511 S.E.2d 358 (1999) (announcing the appropriate remedy for the denial of the right to exercise a peremptory challenge). Where such a denial is established,

no showing of actual prejudice is required to find reversible error. *Id.* Therefore, because appellant established he was wrongfully denied the right to exercise a peremptory challenge, we reverse his conviction.

*Id.* at 66, 512 S.E.2d at 504; *see also State v. Smalls,* 336 S.C. 301, 309, 519 S.E.2d 793, 797 (Ct.App.1999) ("no showing of actual prejudice is required to find reversible error for the denial or impairment of the right to a peremptory challenge."); *cf. State v. Ford,* 334 S.C. 444, 513 S.E.2d 385 (Ct.App.1999) (noting that any *Batson* violation in regards to a possible alternate juror is harmless where an alternate was not needed for deliberations).

*State v. Rayfield,* 357 S.C. 497, 593 S.E.2d 486 (Ct.App. 2004), *cert. granted* (March 3, 2005), is instructive. After the initial jury selection, the State moved for a *Batson* hearing. The trial court found a *Batson* violation. The first jury was quashed and a redraw of the jury followed. The ensuing redraw resulted in no *Batson* challenge, and significantly, none of the jurors struck by defense counsel during the initial jury selection were seated on the second jury. On appeal, Rayfield argued the trial court erred in granting the State's *Batson* motion. The court of appeals held:

> We agree, but we are constrained to conclude that Rayfield ultimately was not legally prejudiced by the trial court's error.
>
> . . . .
>
> . . . It was error for the trial court to grant the State's *Batson* motion.

We nevertheless find no reversible error pursuant to the supreme court precedent of *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996). In *Adams,* the trial court erred in granting the State's *Batson* motion and quashing the jury. Because the jury ultimately selected had none of the persons defense counsel struck from the first jury panel, the supreme court found "no prejudice resulted from the judge's error" and affirmed Adams' convictions. *Id.* at 126, 470 S.E.2d at 373. In so holding, the court in *Adams* recognized that no juror's equal protection rights are violated where the trial court improperly quashes a jury panel. In addition, the court in *Adams* referenced the settled

principle that "[a] defendant has no right to trial by any particular jury." *Id.* But *cf. Ford,* 334 S.C. at 66, 512 S.E.2d at 504 (holding that reversal and granting of a new trial is a proper remedy where the trial court erred in finding defendant violated *Batson* in striking certain jurors and any challenged juror was seated on the second jury). *Id.* at 500–04, 593 S.E.2d at 488–90.

## VII. The Extant Record

Analyzing the first jury and the composition and pattern of strikes, I come to the ineluctable conclusion that the trial judge did not properly conduct the *Batson* hearing. The erroneous procedure utilized in the first *Batson* hearing was exacerbated in the selection of the second jury, thereby mandating a reversal.

The record is devoid of any palliative factor mitigating against reversal.

I **VOTE** to **REVERSE.**