489 S.E.2d 209

**The STATE, Respondent,**

v.

**Jimmy SHORT, Appellant.**

**No. 2664.**

Court of Appeals of South Carolina.

Submitted April 8, 1997.
Decided May 19, 1997.
Rehearing Denied Aug. 28, 1997.

Chief Attorney Daniel T. Stacey, of Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Caroline Callison Tiffin, of Office of the Attorney General, Columbia; and Solicitor C. Gordon McBride, Hartsville, for respondent.

CURETON, Judge:

Jimmy Short was convicted of armed robbery and three counts of assault and battery of a high and aggravated nature. Short appeals, asserting the trial court erred in finding he exercised two of his peremptory challenges in a racially discriminatory manner. We reverse.[1]

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

During selection of the original jury panel, the defense exercised eight of its ten peremptory strikes to remove eight prospective white jurors from the panel and the State exercised three of its five peremptory strikes to remove three prospective black members from the panel. After the first jury panel was selected, both the State and the defense made motions for a hearing pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After conducting a *Batson* hearing, the trial court overruled Short's objections to the State's use of its peremptory challenges.[2] However, the trial court concluded that Short's use of two of his peremptory strikes was racially motivated and, thus, violative of *Batson.* Short's counsel stated he struck Juror 39 because her husband worked as an assistant manager of a business that was often a complaining witness in court. Defense counsel explained he struck Juror 13 because the juror worked at the business where defense counsel's brother was a manager. In response, the solicitor asserted the defense was merely "reaching" for racially neutral explanations. The trial court found that the defense's explanations for its exercise of peremptory strikes were not racially neutral absent a showing of actual bias or prejudice on the part of Jurors 39 and 13. Accordingly, the trial court quashed the first jury.

During the second jury selection, both Jurors 39 and 13 were seated. Short requested a bench conference immediately after the jury selection and thereafter objected to the seating of the two jurors.

■ Short claims the trial court erred in granting the solicitor's *Batson* motion in respect to his use of the peremptory strikes to remove Jurors 39 and 13 from the jury because the explanations he offered for exercising the peremptory strikes were racially neutral. The State argues this issue is not preserved for appellate review because Short failed to make the proper objections in the trial court.

To preserve an issue for appellate review, an appellant must object at his first opportunity. *State v. Sullivan,* 310 S.C. 311, 426 S.E.2d 766 (1993). Short requested a bench conference immediately after the jury was selected and stated on the

---

2. Short has not appealed this ruling.

record his objection to the seating of the two jurors. Under these circumstances, we hold Short made his objection to the second jury at the earliest opportunity. Therefore, his objection is preserved for our review.

In *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court modified the test for determining if a party exercised a peremptory jury strike in a racially discriminatory manner. The Court explained that after a party objects to a jury strike, the proponent of the strike must offer a race-neutral explanation. This explanation is not required to be either persuasive or plausible. *Purkett*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834. "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. (Citations omitted). At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 514 U.S. at 1771, 115 S.Ct. at 1771. The Court emphasized "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Citations omitted). *Id.*

In *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996), our Supreme Court adopted the standard delineated in *Purkett*.[3] In *Adams*, the Court explained that its holding was a departure from its historical interpretation of *Batson*'s requirements inasmuch as the proponent of a peremptory challenge no longer bears any burden of presenting reasonably specific, legitimate explanations for the strike. *Cf. e.g., State v. Tomlin*, 299 S.C. 294, 384 S.E.2d 707 (1989). Under the new test,

> [T]he trial judge must hold a *Batson* hearing when members of a cognizable racial group or gender are struck and the opposing party requests a hearing. The second step of the analysis, however, will require only a race-neutral explanation by the proponent of the strike. In the third step, the

---

**3.** We note that the trial court did not have the benefit of our Supreme Court's decision in *Adams* because Short's trial pre-dated that decision.

opponent of the strike must show that the race-neutral explanation given was mere pretext.

*Adams,* 322 S.C. at 124, 470 S.E.2d at 372.

Thus, under *Adams,* Short was required in the first instance only to offer race-neutral explanations for the strikes. Clearly, Short's explanations for striking Jurors 39 and 13 were facially race-neutral. The burden then shifted to the State to show the race-neutral explanations were pretextual. Generally, pretext is shown by demonstrating that similarly situated jurors of another race were seated. *Sumpter v. State,* 312 S.C. 221, 439 S.E.2d 842 (1994). Here, the State's only articulated reason for challenging Short's peremptory strikes was that considering the other defense strikes, which were all exercised against white prospective jurors, it appeared Short was simply "reaching" for explanations that were racially neutral. However, the State offered no proof, and we can discern none from the record on appeal, that Short allowed black members of the venire who were similarly situated to Jurors 39 and 13 to be seated on the jury. In addition, Short did not use all of his peremptory strikes and white members of the jury venire were seated on the first jury. Moreover, we find nothing implausible or fantastic about Short's explanations for exercising his peremptory strikes against Jurors 39 and 13. Accordingly, we find the State did not meet its burden of proving racial motivation in Short's use of his strikes or that Short's explanations were pretextual. Thus, we hold the trial court erred in quashing the first jury.

■ Our inquiry does not, however, end with this determination. In *Adams,* although our Supreme Court found the trial court erred in finding a *Batson* violation and in quashing the first jury panel, it declined to reverse Adams' conviction based on this error. The Court explained that when a trial judge improperly quashes a jury panel, no juror's equal protection rights are violated. Furthermore, a defendant's right to a fair trial is not violated because a "defendant has no right to a trial by any particular jury." *Adams,* 322 S.C. at 126, 470 S.E.2d at 373. Thus, the Court concluded no prejudice resulted from the trial court's error. Importantly, however, the *Adams* Court noted that its holding might have been different had any of the jurors whom the defense originally struck been

seated on the second jury. *Adams,* 322 S.C. at 126 n. 2, 470 S.E.2d at 373 n. 2.

South Carolina courts have not yet had occasion to rule on the proper remedy for the erroneous finding of a *Batson* violation and quashing of the jury where, as here, originally stricken jurors are seated on a subsequent jury. This precise issue has, however, been addressed in the federal arena. In *United States v. Annigoni,* 68 F.3d 279 (9th Cir.1995), Annigoni challenged the district court's refusal, on *Batson* grounds, to allow him to exercise a peremptory challenge to remove an Asian–American juror from the jury panel where the challenged juror eventually sat on the jury which convicted him of bank fraud. On appeal, a three-judge panel of the United States Court of Appeals for the Ninth Circuit found that the district court had erred in denying Annigoni's peremptory challenge against the Asian–American juror, but declined to reverse Annigoni's conviction based on the error. The three-judge panel determined that the district court's error was harmless because Annigoni "failed to show that any juror challengeable for cause sat on his case. He lost one peremptory strike he should have had. He did not lose an impartial jury." *Id.* at 285.

However, the Ninth Circuit Court of Appeals later granted Annigoni's petition for an *en banc* rehearing and held that the trial court's erroneous denial of Annigoni's right of peremptory challenge to a potential juror required automatic reversal even absent a showing of prejudice. *United States v. Annigoni,* 96 F.3d 1132 (9th Cir.1996). In so holding, the court noted that both the Ninth Circuit and the United States Supreme Court had long adhered to the rule that any error in restricting the exercise of peremptory challenges results in automatic reversal with no showing of prejudice. *Annigoni,* 96 F.3d at 1136, 1141, citing *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *overruled on other grounds by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The *Annigoni* court rejected the notion that the erroneous denial of a criminal defendant's right of peremptory challenge is subject to a harmless error analysis where a juror whom the defendant should have been able to strike is a member of a

convicting jury. The court found, among other things, that unlike a classic "trial error," an error restricting the defendant's use of peremptory strikes "may not be 'quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.'" *Annigoni*, 96 F.3d at 1144 quoting *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The court further noted:

> Another obstacle to harmless-error review of an erroneous denial of peremptory challenge is the dearth of information concerning what went on in the jury room. To subject the denial of peremptory challenge to harmless-error analysis would require appellate courts to do the impossible: to reconstruct what went on in jury deliberations through nothing more than post-trial hearings and sheer speculation. In the context of an appeal based on denial of a peremptory challenge, there is inadequate evidence for an appellate court to determine the degree of harm resulting from the seating of a juror despite a defendant's attempted peremptory strike.

*Id.* at 1145.

Under the circumstances of this case, we find the reasoning of the *Annigoni* court persuasive. Here, unlike the circumstances in *Adams* where no previously stricken jurors were seated on the second jury, Short was subjected to the potential harm of having two jurors whom he should have been allowed to remove from the jury panel sit on the jury that convicted him. Although a criminal defendant has no right to a trial by a particular jury, he is without question entitled to trial by an impartial jury. U.S. Const. amend. VI; *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). The principal function of the peremptory strike is to allow for the removal of a juror in whom the challenging party perceives bias or prejudice, even where the juror is not challengeable for cause. *See Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("The function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before

336

them, and not otherwise."). Indeed, "[w]hile challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable." *Id.* at 220, 85 S.Ct. at 836; *see also State v. Briggs,* 27 S.C. 80, 86, 2 S.E. 854, 857 (1887) ("The right of challenge as allowed [by statute] is regarded sacred."). Because we have no way of determining with any degree of certainty whether Short's right to a fair trial by an impartial jury was abridged by the trial court's erroneous refusal to allow him to exercise his peremptory strikes against two jurors in whom he perceived some form of bias, we hold the error requires reversal of the conviction.

Given our holding on the issue discussed above, we find it unnecessary to address Short's remaining issue on appeal.

REVERSED AND REMANDED.

HEARN and STILWELL, JJ., concur.