512 S.E.2d 500

**The STATE, Respondent,**

v.

**Chris FORD, Appellant.**

**No. 24899.**

Supreme Court of South Carolina.

Heard Jan. 5, 1999.

Decided Feb. 8, 1999.

60

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Robert F. Daley, Jr., all of Columbia; and Solicitor Jay E. Hodge, of Darlington, for respondent.

BURNETT, Justice:

Respondent appeals from his conviction for murder and armed robbery and his sentence of life for the murder and 30 years, consecutive, for the armed robbery. We reverse.

## FACTS

During jury selection, appellant exercised thirteen peremptory challenges when selecting the jury and the two alter-

nates. Twelve of the thirteen jurors struck were white.[1] On the State's motion, the trial court conducted a *Batson*[2] hearing.

Appellant then explained why he struck these jurors. Appellant struck Juror # 7 because her husband's family was active in the rescue squad, which according to appellant is a "quasi-law enforcement" activity. Appellant struck Juror # 2 and Juror # 99 because they work in the banking industry. Juror # 96 was struck because her husband is a "lieutenant of the Dillon County Police Force." Juror # 89 was struck because, as an employee of McLeod Hospital, she "would tend to believe any evidence presented by any medical person." Juror # 124 was struck because he works for a school district. Juror # 105 was struck because he lived in the same trailer park as the mother of the victim. Appellant struck Juror # 48 because he is a paramedic and "he's worked closely with law enforcement and also worked closely with medical personnel...." Juror # 112 was struck because she works for a church. Defense counsel had a bad experience when a minister previously served on a jury so he avoids placing church employees on a jury. Juror # 113 was struck because he is an educator and because his wife works for Rural Sanitation. According to defense counsel, his law office had recently had problems with this business. Appellant struck Juror # 95 because she works at a local hardware store which is owned by a former longtime Dillon County Magistrate and his employees are exposed to pro-prosecution ideas since many law enforcement personnel regularly visit the store. Finally, appellant struck Juror # 126 for the following reason:

> [W]e did not feel comfortable.... He's assistant manager of Tomlinsons on Main Street. My wife helped me select the juror and as a teenager she worked there and he worked there at the time. And we feel that he would feel uncomfortable.
>
> And, in fact, last September, when I had a death penalty case, he sold me a pair of shoes to wear in court for that

---

1. The first jury selected was composed of eight black jurors and four white jurors. One of the alternates was black and one was white.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

trial. So we thought he would be uncomfortable sitting on the jury. We didn't know which way he might go. But it could certainly have a bearing on that. And whenever I go into Tomlinsons we all joke and talk. Of course, we have not talked about this particular trial, but every time I go in there he's asking me about court, different cases going on. And I, certainly, would not want him to be on one of my juries because I wouldn't feel comfortable.

■ The trial judge voiced concern that these reasons were too broad because most explanations concerned where the juror was employed. The trial judge noted he was most concerned with the strikes exercised against Jurors # 95 and # 126. The prosecution argued the reasons given by appellant were "just too general to be effective. There needs to be a specific reason that this person, in a specific sitting [sic], is offensive, not the State or Defense just saying they work somewhere." [3]

■ The trial judge then ruled appellant had violated *Batson*. According to the trial judge, because appellant exercised all but one of his strikes against prospective white jurors, "[t]he cumulative effect is a lot worse picture than looking at it on an individual basis." The trial judge quashed the jury and ordered selection of a new jury. Further, the trial judge ruled appellant could not strike Juror # 126 during the second jury selection. [4] Both Jurors # 95 and # 126 were seated on the second jury. [5]

---

**3.** The State's argument is based on the pre-*State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996) standard. *See State v. Green*, 306 S.C. 94, 409 S.E.2d 785 (1991) (the proponent of the peremptory challenges at issue must present an explanation that is racially neutral, clear, reasonably specific, legitimate and related to the case). However, this trial occurred after this Court adopted *State v. Adams, supra;* therefore, only a race-neutral reason is required.

**4.** It is within the trial judge's discretion to prohibit a strike against a venire person previously struck in violation of *Batson. State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995).

**5.** During the selection of the second jury, appellant used eight strikes. Appellant struck four black venire members and four white venire members. The second jury was composed of seven white jurors and five black jurors. The alternate jurors were a black man and a black woman.

## *ISSUE*

Did the trial court err in sustaining the State's *Batson* challenge and quashing the jury where appellant's reasons for exercising the peremptory strikes were facially race neutral and pretext was not shown?

## *DISCUSSION*

■ As an initial matter, the State argues appellant failed to preserve this issue for appellate review because appellant did not object to the composition of the second jury. We disagree.

We find appellant adequately preserved this issue for review. During the *Batson* hearing, appellant clearly stated his position and the trial judge ruled on the issue. Thus, both appellant's argument and the trial judge's ruling are contained in the record. Further objection would have been useless and unnecessary, especially since the second jury was drawn immediately after this hearing. *Compare with State v. Johnson,* 333 S.C. 62, 508 S.E.2d 29 (1998) (issue is preserved for review where a party's request to charge was denied on-the-record after an opportunity for discussion, and the party is not required to renew his request at the conclusion of the charge).

On the merits, appellant contends the trial judge erred in finding his strikes violated *Batson.* We agree.

■ This Court set forth the proper procedure for a *Batson* hearing in *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996) (citing *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). After a party objects to a jury strike, the proponent of the strike must offer a facially race-neutral explanation. This explanation is not required to be persuasive or even plausible. Once the proponent states a reason that is race-neutral, the burden is on the party challenging the strike to show the explanation is mere pretext, either by showing similarly situated members of another race were seated on the jury or the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment.

 The trial judge's findings of purposeful discrimination rest largely on his evaluation of demeanor and credibility, and the reviewing court should give the findings great deference on appeal. *Sumpter v. State,* 312 S.C. 221, 439 S.E.2d 842 (1994); *State v. Green,* 306 S.C. 94, 409 S.E.2d 785 (1991). However, where the record does not support the trial court's findings, the findings must be overturned. *State v. Grate,* 310 S.C. 240, 423 S.E.2d 119 (1992); *State v. Patterson,* 307 S.C. 180, 414 S.E.2d 155 (1992). Whether a *Batson* violation occurred must be determined by examining the totality of the facts and circumstances in the record surrounding the strike. *State v. Green, supra.* The composition of the jury panel is a factor that may be considered when determining whether a party engaged in purposeful discrimination. *State v. Johnson,* 302 S.C. 243, 395 S.E.2d 167 (1990).

 In this case, appellant's explanations were facially race-neutral. In particular, with regard to Juror # 126, an attorney's personal knowledge of and relationship with a prospective juror is a race-neutral reason. *See State v. Adams, supra* (a potential juror's acquaintance with the trial judge is a valid reason for exercising a peremptory strike). With regard to Juror # 95, a prospective juror's employment in a hardware store owned by a longtime magistrate where local law enforcement officials gather is a race-neutral reason. *State v. Adams, supra* (a potential juror's employment as a court reporter is a valid reason for exercising a peremptory strike); *State v. Green, supra* (unemployment is a race-neutral reason). Further, it is legitimate to strike potential jurors because of their employment. *State v. Adams, supra; State v. Green, supra.* Also, it is legitimate to strike a potential juror because she or he has a relationship with a law enforcement official or because she or he is pro-law enforcement. *Compare with State v. Richburg,* 304 S.C. 162, 403 S.E.2d 315 (1991) (State's explanation that juror was anti-law enforcement was race-neutral).

Further, these explanations are not so fundamentally implausible as to constitute mere pretext without some showing of disparate treatment. The State offered no evidence of

pretext, as required by step three of the *Adams/Purkett* analysis. Although appellant exercised most of his strikes against white jurors, he did not strike every white juror. Instead, some white jurors were accepted by appellant and were placed on the first jury. Further, the fact that appellant used most of his challenges to strike white jurors is not sufficient, in itself, to establish purposeful discrimination. *See State v. Tucker*, 512 S.C. 1, 512 S.E.2d 99 (1998) (no *Batson* violation where the State exercised all six of its peremptory strikes against blacks because the explanations were race-neutral); *State v. Casey*, 325 S.C. 447, 481 S.E.2d 169 (Ct.App. 1997) (no *Batson* violation where solicitor had neutral reasons for all five strikes used against males). Thus, this record fails to support the trial judge's finding of a *Batson* violation. Accordingly, the trial judge erred in ruling these strikes violated *Batson*, and appellant was denied his right to exercise his peremptory challenges.

The State argues, even if the trial judge erred in finding a *Batson* violation, the error was harmless because appellant failed to show the second jury was not impartial. This Court recently addressed this precise issue. *See State v. Short*, 333 S.C. 473, 511 S.E.2d 358 (1999) (announcing the appropriate remedy for the denial of the right to exercise a peremptory challenge). Where such a denial is established, no showing of actual prejudice is required to find reversible error. *Id.* Therefore, because appellant established he was wrongfully denied the right to exercise a peremptory challenge, we reverse his conviction.

**REVERSED.**

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.