298

734 S.E.2d 171

The STATE, Respondent,

v.

Jeremy McMILLAN, Appellant.

No. 5038.

Court of Appeals of South Carolina.

Heard Sept. 10, 2012.

Decided Oct. 17, 2012.

Rehearing Denied Nov. 30, 2012.

300

Nicole Nicolette Mace, of The Mace Law Firm, of Myrtle Beach, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Ernest J. Finney, III, of Sumter, for Respondent.

SHORT, J.

Jeremy McMillan appeals his convictions for two counts of murder and possession of a weapon during the commission of a violent crime, arguing the court erred in (1) finding his reason for striking jurors was pretextual; (2) not following this court's order requiring it to hold a hearing to address his motion for remand to reconstruct the record; and (3) not

making an evidentiary ruling regarding the State's introduction of prior bad acts because it inflamed the jury. We reverse and remand for a new trial.

## FACTS

In the early morning of April 29, 2006, McMillan and Toby Fulmore, III, went to a club in Lee County named Mr. C's.[1] Before arriving at the club, Fulmore drove McMillan to his house, where McMillan retrieved a rifle and put it in Fulmore's truck. Fulmore later testified McMillan also had two pistols with him at the time. After the two arrived at the club, a fight broke out, and McMillan shot Patrick Hood and Joshua Lee, killing them both.[2] During the shooting, McMillan also shot and injured nine others. McMillan was indicted for two counts of murder, nine counts of assault and battery with intent to kill, and possession of a weapon during crimes of violence.

A trial was held December 8–11, 2008. At the beginning of trial, the State announced it was only proceeding on two counts of murder (counts one and two) and possession of a weapon during a violent crime (count twelve). At the close of the State's case, McMillan made a motion for directed verdict, which the court denied. A jury found McMillan guilty, and the court sentenced him to life without parole for murder and five years' imprisonment for possession of a weapon during the commission of a violent crime. McMillan's motion to set aside the verdict was denied by the court. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). Thus, on review, the appellate court is limited to determining whether the trial

---

1. Fulmore was also indicted for two counts of murder, nine counts of assault and battery with intent to kill, and possession of a weapon during crimes of violence. However, he was tried separately from McMillan, and he testified against McMillan at McMillan's trial.

2. The indictment lists the second victim as Joshua Lee; however, the forensic pathologist who did the autopsy testified his name was Tremaine Lee.

judge abused his discretion. *Id.* An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Garrett*, 350 S.C. 613, 619, 567 S.E.2d 523, 526 (Ct.App.2002).

## LAW/ANALYSIS

McMillan argues the trial court erred in finding his reason for striking juror 34 was pretextual. We agree.

In *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court of the United States held the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States forbids a prosecutor from challenging "potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." In *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court held the Constitution also prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges. Additionally, the Equal Protection Clause prohibits the striking of a venire person on the basis of gender. *State v. Evins*, 373 S.C. 404, 415, 645 S.E.2d 904, 909 (2007). When one party strikes a member of a cognizable racial group or gender, the trial court must hold a *Batson* hearing if the opposing party requests one. *State v. Haigler*, 334 S.C. 623, 629, 515 S.E.2d 88, 90 (1999).

In *State v. Evins*, our supreme court explained the proper procedure for a *Batson* hearing:

> After a party objects to a jury strike, the proponent of the strike must offer a facially race-neutral explanation. Once the proponent states a reason that is race-neutral, the burden is on the party challenging the strike to show the explanation is mere pretext, either by showing similarly situated members of another race were seated on the jury or that the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment.

373 S.C. at 415, 645 S.E.2d at 909. The proponent's reason for striking a juror does not have to be clear, reasonably specific,

or legitimate—the reason need only be race neutral. *State v. Adams*, 322 S.C. 114, 123, 470 S.E.2d 366, 371 (1996). "The burden of persuading the court that a *Batson* violation has occurred remains at all times on the opponent of the strike." *Evins*, 373 S.C. at 415, 645 S.E.2d at 909. The opponent of the strike must show the race or gender-neutral explanation was mere pretext, which generally is established by showing the party did not strike a similarly-situated member of another race or gender. *Adams*, 322 S.C. at 124, 470 S.E.2d at 372.

"Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record." *State v. Edwards*, 384 S.C. 504, 509, 682 S.E.2d 820, 822 (2009). Under some circumstances, the explanation given by the proponent may be so fundamentally implausible the trial judge can find the explanation was mere pretext, even without a showing of disparate treatment. *Haigler*, 334 S.C. at 629, 515 S.E.2d at 91. "The trial judge's findings of purposeful discrimination rest largely on his evaluation of demeanor and credibility." *Edwards*, 384 S.C. at 509, 682 S.E.2d at 822. "Often the demeanor of the challenged attorney will be the best and only evidence of discrimination, and an 'evaluation of the [attorney's] state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.'" *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The judge's findings regarding purposeful discrimination are given great deference and will not be set aside by this court unless clearly erroneous. *Evins*, 373 S.C. at 416, 645 S.E.2d at 909–10. "This standard of review, however, is premised on the trial court following the mandated procedure for a *Batson* hearing." *State v. Cochran*, 369 S.C. 308, 312, 631 S.E.2d 294, 297 (Ct.App.2006). "[W]here the assignment of error is the failure to follow the *Batson* hearing procedure, we must answer a question of law. When a question of law is presented, our standard of review is plenary." *Id.* at 312–13, 631 S.E.2d at 297.

During jury selection, McMillan struck five jurors: 27, 34, 72, 138, and 174. The State requested a *Batson* hearing, asserting "[t]here were twenty[-]three jurors drawn and the Defendant struck five white ... males from the jury." Although the court ultimately found McMillan's reasons for

striking jurors 27, 34, and 138 were pretextual, McMillan only appeals as to jurors 27 and 34. During the second jury selection, juror 34 was seated on the jury, and juror 27 was seated as an alternate. We find we need not discuss juror 27 because he was never required to serve as a juror; therefore, we only discuss the *Batson* issue as it relates to juror 34.

In response to the State's *Batson* motion, McMillan explained he struck juror 34 because someone told him juror 34 "displayed attitudes that he believed to be not consistent with being a good and unfair and unbiased juror in this matter." [3] McMillan also asserted he seated one white male on the jury in response to the State's challenge that he struck five white males from the jury. Responding to McMillan's explanation, the State questioned McMillan's stated reason for dismissing juror 34, arguing:

> [U]nless he can articulate some reason, other than somebody told me he wouldn't be a good juror. I don't see where that would be per-textual [sic] or an excuse. I mean somebody told me [he] wouldn't be a good juror, well a lot of people tell me if people will be a good juror, but I need to know something about that person. He should have said why would he [sic] be a good juror. What has he said about this case or what's he said about the Defendant or whatever.

Judge Howard King found McMillan's reason for striking juror 34 was pretextual, and therefore, his strike was improper. Following the trial court's quashing of the first jury, McMillan was not allowed to strike juror 34 from the second jury, and juror 34 was impaneled for McMillan's trial.

On appeal, McMillan argues "the [S]tate was not required to meet its burden of establishing purposeful discrimination because the trial court effectively placed the burden of disprov-

---

**3.** McMillan's counsel explained that "[i]n consulting with members of the Lee County Defense bar prior to drawing the jury advise [sic] me that they attended church with [juror 34] and that he had displayed to them some views that they believed to be controversial for this case." He further explained, "We were reviewing the juror list and it was indicated to me by members of the Lee County Local Bar, in particular Mr. Severance indicated that [juror 34] would not be a good pick for this jury, in that he has had some interactions with him and he displayed attitudes that he believed to be not consistent with being a good and unfair and unbiased juror in this matter."

ing pretext on the appellant." He maintains the court failed to follow the *Batson* requirements set out in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996), and the "[S]tate simply argued that the defendant had not met his burden of giving a racial[ly] neutral reason for the strike."

In *Purkett*, the Supreme Court stated the opponent of a peremptory challenge must first make out a *prima facie* case of racial discrimination (step one). 514 U.S. at 767, 115 S.Ct. 1769; *see also Adams*, 322 S.C. at 124, 470 S.E.2d at 372 (adopting the standard delineated in *Purkett*). Then, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two), and if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination (step three). *Purkett*, 514 U.S. at 767, 115 S.Ct. 1769. " '[U]nless a discriminatory intent is inherent' in the explanation provided by the proponent of the strike [in step two], 'the reason offered will be deemed race neutral' and the trial court must proceed to the third step of the *Batson* process." *State v. Cochran*, 369 S.C. 308, 314, 631 S.E.2d 294, 298 (Ct.App.2006) (quoting *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769). The *Purkett* court found the Eighth Circuit Court of Appeals had "erred by combining *Batson's* second and third steps into one, requiring that the justification tendered at the second step [by the proponent] be not just neutral but also at least minimally persuasive, i.e., a 'plausible' basis for believing that 'the person's ability to perform his or her duties as a juror' will be affected." 514 U.S. at 768, 115 S.Ct. 1769. The court explained the persuasiveness of the justification does not become relevant until the third step when the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. *Id.* "At that [third] stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id.* The court found the prosecutor's proffered explanation—that he struck the juror because he had long, unkempt hair, a mustache, and a beard—was race-neutral and satisfied the prosecution's step two burden of articulating a nondiscriminatory reason for the strike because the wearing of beards and the growing of long, unkempt hair,

are not characteristics peculiar to any race. *Id.* at 769, 115 S.Ct. 1769. Also, in *Adams,* our supreme court found the explanations given by defense counsel—that one juror was a court reporter and looked "too intelligent," and that another juror knew the judge—were racially-neutral, legitimate reasons for exercising peremptory strikes. 322 S.C. at 125, 470 S.E.2d at 372.

Here, McMillan's stated reason for striking juror 34 was that he had reason to believe the juror would not be unbiased based on his counsel's conversation with members of the Lee County Bar. We find this reason, although questionable, is race neutral. *See id.* at 123, 470 S.E.2d at 371 (stating the defendant's reasons for striking a juror do not have to be reasonably specific or legitimate—the reason need only be race neutral); *Cochran,* 369 S.C. at 321, 631 S.E.2d at 301 ("Because a juror's perceived bias (for whatever reason) lies at the core of virtually every peremptory challenge, courts should intervene only when it is demonstrated that the strike runs afoul of the Constitution."); *State v. Short,* 327 S.C. 329, 335, 489 S.E.2d 209, 212 (Ct.App.1997) ("The principal function of the peremptory strike is to allow for the removal of a juror in whom the challenging party perceives bias or prejudice, even where the juror is not challengeable for cause."). We also find the State, as the opponent of the strike, failed to prove McMillan's strike was purposeful racial discrimination. Furthermore, the fact that McMillan "used most of his challenges to strike white jurors is not sufficient, in itself, to establish purposeful discrimination." *State v. Ford,* 334 S.C. 59, 66, 512 S.E.2d 500, 504 (1999). Therefore, we find the trial court erred in ruling McMillan's stated reason for striking juror 34 was not race neutral and in granting the State's *Batson* motion.

Further, because juror 34 was seated on the second jury, we remand the case for a new trial. *See Edwards,* 384 S.C. at 509, 682 S.E.2d at 823 (holding if a trial court improperly grants the State's *Batson* motion and one of the disputed jurors is seated on the jury, then the erroneous *Batson* ruling has tainted the jury and prejudice is presumed because there is no way to determine with any degree of certainty whether a defendant's right to a fair trial by an impartial jury was

abridged, and the proper remedy in such a case is a new trial); *see also Ford,* 334 S.C. at 66, 512 S.E.2d at 504 (determining that no showing of actual prejudice is required and reversing appellant's conviction because he established he was wrongfully denied the right to exercise a peremptory challenge).

Because we reverse and remand the case for a new trial based on this issue, we need not address the remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when its determination of another issue is dispositive of the appeal).

**REVERSED AND REMANDED.**

KONDUROS and LOCKEMY, JJ., concur.