748 S.E.2d 247

**The STATE, Respondent,**

v.

**Brandon ROGERS, Appellant.**

Appellate Case No. 2011–190166.

**No. 5170.**

Court of Appeals of South Carolina.

Heard April 2, 2013.

Decided Sept. 4, 2013.

522

Appellate Defender Breen Stevens, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Respondent.

GEATHERS, J.

Appellant Brandon Rogers appeals his convictions for second-degree burglary and of petit larceny. Rogers argues that the trial court erred in (1) granting the State's *Batson*[1] motion regarding three jurors and, thereafter, preventing him from striking the challenged jurors in the subsequent jury selection, and (2) sentencing him based on the pre-amended version of South Carolina Code section 16–11–312 (Supp.2012). We reverse the trial court's finding of a *Batson* violation as to each of the three jurors and remand for a new trial.

**FACTS/PROCEDURAL HISTORY**

Rogers and his brother, Daniel Rogers, were indicted for burglary in the second-degree and of petit larceny. During

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the initial jury selection, Rogers and his co-defendant, both of whom are black, collectively exercised peremptory strikes on nine prospective white jurors [2], including Jurors 65, 89, and 166.[3] Rogers struck Juror 65 (a white female) and Juror 166 (a white male). His co-defendant struck Juror 89 (a white female). The jury was ultimately composed of three black males, six black females, one white male, two white females, and one white female alternate. The State subsequently requested a *Batson* hearing, asserting eight of the nine strikes exercised by the defense were on the basis of race.

Ultimately, the trial court granted the State's *Batson* motion regarding five of the eight jurors. The trial court quashed the first jury and precluded the defense from striking any of the five jurors during the second jury selection. Jurors 65, 89, and 166 were selected for the second jury, and the case proceeded to trial.

The jury found Rogers and his co-defendant guilty of burglary in the second degree and petit larceny. The trial court sentenced Rogers to twelve years' imprisonment for the burglary charge, and to a concurrent term of thirty days for petit larceny. This appeal followed.

## STANDARD OF REVIEW

■■■■ "Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record." *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001). "Appellate courts give the trial judge's finding great deference on appeal, and review the trial judge's ruling with a clearly erroneous standard." *Id.* "A finding is clearly erroneous if it is not supported by the record." *Id.* at 620, 545 S.E.2d at 813.

---

**2.** Rogers exercised peremptory challenges against four members of the jury venire: two white males and two white females, one of whom was a potential alternate. His co-defendant exercised peremptory challenges against five members of the jury venire: four white males and one white female.

**3.** Although the trial court ultimately found Rogers' and his co-defendant's stated reasons for striking five of the eight jurors were pretextual, Rogers only appeals as to Jurors 65, 89, and 166.

## LAW/ANALYSIS

### I. *Batson* Motion

Rogers argues the trial court erred in finding his defense counsel's and his codefendant's counsel's explanations for striking Jurors 65, 89, and 166 were pretextual, and by preventing him from striking the three jurors when they were called in the subsequent jury selection.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venire person on the basis of race or gender." *Id.* at 615, 545 S.E.2d at 810. "The purposes of *Batson* and its progeny are to protect the defendant's right to a fair trial by a jury of the defendant's peers, protect each venireperson's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of our system of justice by seeking to eradicate discrimination in the jury selection process." *State v. Haigler*, 334 S.C. 623, 628–29, 515 S.E.2d 88, 90 (1999) (citations omitted). "When one party strikes a member of a cognizable racial group or gender, the trial court must hold a *Batson* hearing if the opposing party requests one." *Shuler*, 344 S.C. at 615, 545 S.E.2d at 810.

In *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the Supreme Court of the United States explained the proper procedure for a *Batson* hearing as follows:

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

Step two of this process does not demand an explanation that is persuasive or even plausible. *State v. Cochran*, 369 S.C. 308, 314, 631 S.E.2d 294, 298 (Ct.App.2006) (quoting *Purkett*, 514 U.S. at 767–68, 115 S.Ct. 1769). At step two, "the proponent of the strike does not carry 'any burden of present-

ing reasonably specific, legitimate explanations for the strikes.'" *Id.* (quoting *State v. Adams*, 322 S.C. 114, 123, 470 S.E.2d 366, 371 (1996)). "Therefore, '[u]nless a discriminatory intent is inherent' in the explanation provided by the proponent of the strike, 'the reason offered will be deemed race neutral' and the trial court must proceed to the third step of the *Batson* process." *Id.* (quoting *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769).

"At step three, the opponent of the strike must show the reason offered, though facially race-neutral, was actually mere pretext to engage in purposeful racial discrimination." *Cochran*, 369 S.C. at 315, 631 S.E.2d at 298 (citing *Adams*, 322 S.C. at 124, 470 S.E.2d at 372). "The burden of persuading the court that a *Batson* violation has occurred remains at all times on the opponent of the strike." *Haigler*, 334 S.C. at 629, 515 S.E.2d at 91. "This burden is generally established by showing similarly situated members of another race were seated on the jury." *Cochran*, 369 S.C. at 315, 631 S.E.2d at 298. "Under some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, at the third step of the analysis, that the explanation was mere pretext even without a showing of disparate treatment." *Payton v. Kearse*, 329 S.C. 51, 55, 495 S.E.2d 205, 208 (1998). "When the opponent of the strike proves the proponent of the strike practiced purposeful racial discrimination, the trial court must quash the entire jury panel and initiate another jury selection de novo." *Cochran*, 369 S.C. at 315, 631 S.E.2d at 298.

"If a trial court improperly grants the State's *Batson* motion, but none of the disputed jurors serve on the jury, any error in improperly quashing the jury is harmless because a defendant is not entitled to the jury of her choice." *State v. Edwards*, 384 S.C. 504, 509, 682 S.E.2d 820, 823 (2009). "However, if one of the disputed jurors is seated on the jury, then the erroneous *Batson* ruling has tainted the jury and prejudice is presumed in such cases 'because there is no way to determine with any degree of certainty whether a defendant's right to a fair trial by an impartial jury was abridged.'" *Id.* (quoting *State v. Rayfield*, 369 S.C. 106, 114, 631 S.E.2d 244, 248 (2006)). "The proper remedy in such cases is the granting of a new trial." *Id.*

## A. Juror 65

Rogers argues the trial court erred in finding his reason for striking Juror 65, a white female, was pretextual. We agree.

█ At the *Batson* hearing, Rogers' defense counsel stated that he struck Juror 65 because she was a retired school teacher and, therefore, "had experience as a disciplinarian." He further explained:

> Because she is a school teacher, Your Honor, I believe that is axiomatic with that job. Or at least every teacher that I had in public school is less likely wanting [sic] to hear excuses from anybody. And less likely to find excuses or any kind of the defendants who are also people in their early twenties might want to—I just know that teachers don't like excuses, and they don't like—they don't like people trying to talk their way out of trouble. Or they didn't when I was in school.

In response, the State argued that the strike was improper because defense counsel's stated reason for striking Juror 65 was rooted in a stereotype of the teaching profession. The trial court accepted the State's argument, stating the following:

> [B]ut that kind of stereotyping of groups or subgroups are specifically prohibited by Payton versus Kearse, a South Carolina Supreme Court case, and *you can't just class people into stereotype groups or subgroups, and give that as a reason for being racially neutral.*

(emphasis added). Additionally, the trial court found that defense counsel's explanation was pretextual and, therefore, improper, because the defense seated a juror who was similarly situated to Juror 65.[4]

In *Payton v. Kearse*, 329 S.C. 51, 55–56, 495 S.E.2d 205, 208 (1998), our supreme court held that striking a white juror because she was a "redneck" was facially discriminatory, and, therefore, violated *Batson*. In so holding, the court reasoned, "[t]he term 'redneck' is a racially derogatory term applied

---

4. Prior to issuing its ruling, the trial court erroneously stated that Juror 65 was a sales representative. Based on this misstatement it appears the trial court may have confused Juror 65, a retired teacher, with Juror 166, a sales representative.

exclusively to members of the white race." *Id.* Significantly, the court went on to note: "Our holding *only* prevents a party from striking a juror based on a *racially stereotypical reason.*" *Id.* at 56–57, 495 S.E.2d at 208 (emphasis added).

In this instance, the trial court misinterpreted *Payton* as precluding a party from striking a juror on the basis of any stereotype. In *Payton,* our supreme court made clear that its holding only prevented a party from striking a juror based on a *racially* stereotypical reason. *See id.* Because defense counsel's explanation for striking Juror 65 was not rooted in a racial stereotype, the trial court erred in ruling that his explanation was facially discriminatory under the standard enunciated in *Payton.* Moreover, a prospective juror's employment is a legitimate race-neutral reason for exercising a peremptory strike. *See Cochran,* 369 S.C. at 318, 631 S.E.2d at 300 ("The employment status of a prospective juror is a race-neutral reason for using a peremptory challenge."); *Adams,* 322 S.C. at 125, 470 S.E.2d at 372 (finding a prospective juror's type of employment is a race-neutral reason for a strike). Therefore, defense counsel's explanation that he struck Juror 65 based on her previous employment as a teacher was race-neutral.

Because Rogers' defense counsel offered a facially race-neutral explanation for the strike, the burden was on the State, as the opponent of the strike, to prove defense counsel's stated reason was mere pretext for racial discrimination. *See Rayfield,* 369 S.C. at 112, 631 S.E.2d at 247 (stating that once the proponent of the strike offers a reason that is race-neutral, the burden is on the party challenging the strike to show the explanation is mere pretext). Here, the State merely argued that an explanation based on a stereotype does not provide a proper basis for the exercise of a peremptory strike. Our supreme court has held that "just because the reason given for striking a juror may fit a stereotype does not necessarily mean the reason is pretextual." *Cochran,* 369 S.C. at 321–22, 631 S.E.2d at 302. Consequently, the fact that defense counsel's strike was based on a stereotype of the teaching profession, in itself, was insufficient to establish that his explanation was pretextual. *See State v. Ford,* 334 S.C. 59, 64, 512 S.E.2d 500, 503 (1999) (stating the opponent of a strike can show pretext, "either by showing similarly situated members of

another race were seated on the jury or the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment"). Accordingly, the State, as opponent of the strike, failed to meet its burden of showing that defense counsel's reason for striking Juror 65 was mere pretext for purposeful discrimination.

 Additionally, we find the record fails to support the trial court's finding that defense counsel's strike of Juror 65 was pretext for purposeful discrimination. Here, the trial court found that counsel's explanation was pretextual because the defense seated a juror who was similarly situated to Juror 65. "Pretext generally will be established by showing that *similarly situated* members of *another race* were *seated* on the jury." *Haigler*, 334 S.C. at 629, 515 S.E.2d at 91 (emphases added). Here, the only juror the trial court identified as being similarly situated to Juror 65 was Juror 66, a white male and self-employed college graduate who was stricken by Rogers' co-defendant based on his employment. Because the similarly situated juror identified by the trial court was not seated on the jury and was of the same race as the challenged juror, we find the trial court erred in ruling defense counsel's stated reason for striking Juror 65 was pretextual and, consequently, granting the State's *Batson* motion and quashing the first jury.

### B. Juror 166

Rogers asserts the trial court erred in ruling his stated reason for striking Juror 166, a white male, was pretextual. We agree.

 During the *Batson* hearing, defense counsel offered the following explanation for striking Juror 166:

[He] was a sales representative. I know from my personal experience they do tend to be more conservative. Also, I believe he had somewhat of a crew cut haircut, looked kind of militant. They also tend to be conservative, law and order type folks. I know sales reps like my father drive around all day selling stuff, listening to Rush Limbaugh. I don't think he would have a whole lot of sympathy for my client, is what he looked like.

The State once again argued that defense counsel's reasons for striking Juror 166 were pretextual because they were based on a stereotype. Additionally, the State contended that a juror's political affiliation was an improper basis for a peremptory challenge, citing *Foster v. Spartanburg Hospital System*, 314 S.C. 282, 442 S.E.2d 624 (Ct.App.1994). Relying on *Payton*, the trial court concluded that defense counsel's explanation was not race-neutral because it was based on a stereotype. Additionally, the trial court found that defense counsel's explanation was pretextual and, therefore, improper, because the defense seated a similarly situated juror.

As previously noted, the *Payton* court explicitly limited its holding to a narrow subset of stereotypes—racial stereotypes. *See Payton*, 329 S.C. at 56–57, 495 S.E.2d at 208. At the *Batson* hearing, defense counsel stated that he believed Juror 166 was conservative based on his appearance and his employment and, consequently, did not think Juror 166 would sympathize with Rogers. Pursuant to *Payton*, the fact that defense counsel's reason for striking Juror 166 was rooted in a conservative stereotype did not make his stated reason facially discriminatory.

As to defense counsel's strike of Juror 166 due to his conservative appearance, a prospective juror's demeanor and disposition are valid reasons for exercising a strike. *See Purkett*, 514 U.S. at 769, 115 S.Ct. 1769 (determining a prosecutor's explanation that he struck a juror because "he had long, unkempt hair, a mustache, and a beard" was race-neutral); *Rayfield*, 369 S.C. at 113, 631 S.E.2d at 247–48 (concluding that defense counsel's explanation that he struck a juror because of his "conservative appearance" was a gender-neutral explanation); *State v. Tucker*, 334 S.C. 1, 8, 512 S.E.2d 99, 102 (1998) (stating a juror's disposition and demeanor are race-neutral reasons for exercising a peremptory strike). In *United States v. Blotcher*, 142 F.3d 728, 730, 732 (4th Cir. 1998), the Court of Appeals for the Fourth Circuit concluded that defense counsel proffered a race-neutral reason for exercising a peremptory strike where he explained that he struck a white juror because he "appear[ed] to be very-just from his appearance, a conservative person.... He's got his hair kind of nice and he's got nice glasses on." Similar to *Blotcher*, Rogers' defense counsel explained that he struck Juror 166

because he believed Juror 166 was a "conservative, law and order type [ ]" based on his "crew cut haircut" and "militant" appearance. Furthermore, the wearing of a crew cut is not a characteristic peculiar to any particular racial group. *Cf. McCrea v. Gheraibeh,* 380 S.C. 183, 187, 669 S.E.2d 333, 335 (2008) (holding that uneasiness over the juror's dreadlocks' was not a race-neutral reason for exercising a peremptory strike because "dreadlocks retain their roots as a religious and social symbol of historically black cultures"). Therefore, we find defense counsel's explanation that he struck Juror 166 due to his conservative appearance was race-neutral.

As to defense counsel's strike of Juror 166 due to his belief that sales representatives are conservative, the State contends that because *Foster* prohibited a party from striking a juror because of his political affiliation, it is also improper to strike a juror because he or she is a conservative. Specifically, the State argues that defense counsel's categorization of sales representatives as conservative was mere speculation and, therefore, not a reasonable, race-neutral explanation. We disagree.

We find *Foster* is procedurally distinct from the case at hand because it preceded *Purkett* and *Adams,* which clarified the three-step method established for executing a *Batson* hearing. In *Foster,* counsel for the hospital explained that he struck a black male juror based on his answer in his juror questionnaire that he was a member of the Democratic Party, as well as his affirmative statement that he was a " 'loyal American citizen, [who has] never been in any trouble with the law.' " 314 S.C. at 285, 442 S.E.2d at 626 (alteration in original). Counsel asserted, "a Democrat is more inclined than a Republican or some other party affiliate to favor 'the little person.' " *Id.* The court held that such a "sweeping generalization" about members of an entire political party was not a race-neutral explanation because it was "mere speculation" and did not "rest on a reasonable basis." *Id.* (citing *State v. Grandy,* 306 S.C. 224, 227, 411 S.E.2d 207, 208 (1991)). Subsequent to the *Foster* decision, *Purkett* and *Adams* altered the procedure for the second step of the *Batson* analysis so that the proponent of the strike no longer has the burden of presenting reasonably specific, legitimate explanations for a strike; instead, the proponent need only present a racially

neutral explanation. *See Purkett,* 514 U.S. at 768–69, 115 S.Ct. 1769 (stating that under the second step, a party's reasons for striking a juror do not have to be persuasive or even plausible, so long as they are race-neutral); *Adams,* 322 S.C. at 124, 470 S.E.2d at 372 (adopting the standard delineated in *Purkett* for determining whether a party exercised strikes in violation of *Batson* ). Thus, the *Purkett/Adams* standard is a clear deviation from *Foster,* which required that the proponent of a strike offer an explanation that rests on a reasonable basis, not mere speculation. *Compare Foster,* 314 S.C. at 285, 442 S.E.2d at 626 (citing *Grandy,* 306 S.C. at 227, 411 S.E.2d at 208), *with Purkett,* 514 U.S. at 768–69, 115 S.Ct. 1769 (stating that under the second step a party's reasons for striking a juror *do not have to be persuasive or even plausible,* so long as they are race-neutral).

We also find *Foster* is distinguishable from the instant case because defense counsel did not explicitly state that he struck Juror 166 because he was a member of a particular political party. Although defense counsel referenced a well-known, politically conservative talk-radio host in giving his explanation, counsel explicitly stated that he struck Juror 166 based on his belief that individuals employed as sales representatives are "conservative." Moreover, defense counsel's reason for striking Juror 166 was rooted in his own personal experience with sales representatives and was not based on a "sweeping generalization" about any particular political party.

In addition to the distinctions between *Foster* and the instant case, we also note our courts have previously upheld the exercise of peremptory strikes against members of a particular profession due to their perceived attitudes or beliefs. In *State v. Flynn,* the State explained that it struck a black female because she was a Head Start director, which it viewed as "a very liberal job." 368 S.C. 83, 84, 627 S.E.2d 763, 764 (Ct.App.2006). In response, defense counsel argued that being liberal was not an appropriate reason for striking a juror. *Id.* at 84, 627 S.E.2d at 765. The State further explained, " 'Your Honor, I believe that is a social welfare kind of program, and as director she is liberal in nature. It's a liberal type of attitude and job, and that is why I struck her.' " *Id.* The trial court concluded the State's explanation was race-neutral. *Id.* On appeal, Flynn argued the trial court erred in

not finding the State violated *Batson* because the State " 'advanced a racial stereotype' to justify striking Juror 21." *Id.* at 86, 627 S.E.2d at 765. This court concluded, "the State asserted that due to her employment, it believed Juror 21 was 'liberal.' As Flynn has offered no evidence other than a conclusory assertion of racial motivation, we find the trial court did not err in failing to find a *Batson* violation." *Id.*

In *Cochran*, defense counsel struck a white female juror, in part, because her husband was an insurance agent. 369 S.C. at 320, 631 S.E.2d at 301. In explaining his strike to the trial court, defense counsel shared his own experience with jurors or spouses of jurors employed as insurance agents:

> Your Honor, I never put the relatives [sic] bank tellers and insurance agents[ ][o]n my juries[.] ... If you're an insurance agent. Or if you're married to an insurance agent. Or if they're a bank teller or married to a bank teller. *These are the most straight-laced, conservation [sic] people that, that you could find, in my opinion. And they will ... always convict your client.*

*Id.* (emphasis added) (alterations in original). On appeal, this court held defense counsel's explanation was race-neutral. *Id.* at 321, 631 S.E.2d at 302.

Similar to *Flynn* and *Cochran*, defense counsel struck Juror 166 due to his belief that Juror 166's type of employment was linked to a conservative viewpoint and, consequently, Juror 166 would not sympathize with Rogers. Therefore, although defense counsel's stated reason may have been questionable, we find it was race-neutral. *See Adams*, 322 S.C. at 123, 470 S.E.2d at 371 (stating a party's reasons for striking a juror do not have to be reasonable, specific, or legitimate; the reason need only be race-neutral); *Cochran*, 369 S.C. at 321, 631 S.E.2d at 301 ("Because a juror's perceived bias (for whatever reason) lies at the core of virtually every peremptory challenge, courts should intervene only when it is demonstrated that the strike runs afoul of the Constitution."); *State v. Short*, 327 S.C. 329, 335, 489 S.E.2d 209, 212 (Ct.App.1997), *aff'd*, 333 S.C. 473, 511 S.E.2d 358 (1999) ("The principal function of the peremptory strike is to allow for the removal of a juror in whom the challenging party perceives bias or prejudice, even where the juror is not challengeable for cause.").

Once Rogers' defense counsel offered a race-neutral explanation for the strike, it was incumbent upon the State, as the opponent of the strike, to show the explanation was mere pretext for racial discrimination. Here, the State failed to meet its burden by merely asserting defense counsel based his strike on a stereotype of a political party. *See Cochran,* 369 S.C. at 321–22, 631 S.E.2d at 302 (stating that "just because the reason given for striking a juror may fit a stereotype does not necessarily mean the reason is pretextual"); *Ford,* 334 S.C. at 64, 512 S.E.2d at 503 (stating the opponent of a strike can show pretext, "either by showing similarly situated members of another race were seated on the jury or the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment"). Because the State failed to offer sufficient evidence of pretext, we find it did not meet its burden of showing the strike was mere pretext.

Additionally, we find the record fails to support the trial court's finding that defense counsel's strike of Juror 166 was pretext for purposeful discrimination. The trial court identified Juror 66, a self-employed college graduate, as being similarly situated to Juror 166. However, Juror 66 was a white male and was struck by Rogers' co-defendant based on his employment. *See Haigler,* 334 S.C. at 629, 515 S.E.2d at 91 (stating "[p]retext generally will be established by showing that similarly situated members of *another race* were *seated* on the jury" (emphases added)). Moreover, defense counsel similarly struck a white female juror who indicated that she worked as a hog farmer on the ground that farmers "tend to be a lot more religious and conservative from my experience with them." *See Cochran,* 369 S.C. at 327, 631 S.E.2d at 304–05 ("[A] strike must be examined in light of the circumstances under which it is exercised, including an examination of the explanations offered for other strikes."). Furthermore, although Rogers exercised most of his strikes against white jurors, he did not strike every white juror, and also struck several black jurors. *See Ford,* 334 S.C. at 66, 512 S.E.2d at 504 (finding the fact that the appellant used most of his challenges to strike white jurors was not sufficient, in itself, to establish purposeful discrimination). As a result, the ultimate composition of the jury panel was diverse. *See Shuler,* 344

S.C. at 621, 545 S.E.2d at 813 ("[T]he composition of the jury panel is a factor that may be considered when determining whether a party engaged in purposeful discrimination pursuant to a *Batson* challenge."). In light of the totality of facts and circumstances in the record, we find the trial court erred in ruling defense counsel's stated reason for striking Juror 166 was pretextual and, consequently, granting the State's *Batson* motion and quashing the first jury.

### C. Juror 89

Rogers asserts the trial court erred in finding his co-defendant's reason for striking Juror 89, a white female, was pretextual.

At the *Batson* hearing, counsel for Rogers' co-defendant explained that he struck Juror 89 because she worked as a manager at CitiFinancial in Dillon, South Carolina, and her employer used the Sheriff's Department to serve almost all of their papers exclusively.[5] The trial court found that counsel offered a race-neutral explanation for striking Juror 89. The State countered that Juror 89 managed a CitiFinancial office in Lumberton, North Carolina, not Dillon, South Carolina, as believed by the defense. Additionally, the State claimed that Juror 89 had not indicated that she had a close relationship with law enforcement officers. The trial court found that the strike was pretextual because it was based on counsel's inaccurate belief that Juror 89 worked in the Dillon office location. The trial court reasoned:

> The real problem is, is that it is not true. This lady, according to the returns, worked for this company in Lumberton, North Carolina. That was shown on her return to the Clerk's Office. This return would be available to all the parties, including defense counsel. It is also my recollection that she said that when the roll was called, but I could not swear to that. But, in any event, it is very clearly on her return that she is employed in Lumberton, North Carolina. Therefore, I find that the reason for striking Juror 89 was pretextual.

---

5. Counsel for co-defendant admitted he had no personal basis for this rationale; however, he stated that his prior conversation with Fourth Judicial Circuit Defender Michael Stephens supported this belief.

Although counsel for Rogers' co-defendant mistakenly believed Juror 89 worked in CitiFinancial's Dillon office, we find this mistake was not evidence that his explanation was pretext for racial discrimination. *See Ford,* 334 at 64, 512 S.E.2d at 503 (stating the opponent of a strike can show an pretext, "either by showing similarly situated members of another race were seated on the jury or the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment"). In offering his explanation for striking Juror 89, counsel for Rogers' co-defendant asserted: "that specific finance company, Your Honor. Not just any finance company in general, but CitiFinancial uses the Sheriff's Department to serve their papers on people who are behind on their payments, or for any other reason." Notably, counsel specifically argued that Juror 89's relationship with law enforcement was grounded in her employment with CitiFinancial in general, rather than a specific CitiFinancial office location. Therefore, the fact that Juror 89 actually worked in CitiFinancial's Lumberton office did not negate counsel's stated reason. Moreover, a prospective juror's type of employment is a valid race-neutral reason for exercising a peremptory strike. *See Cochran,* 369 S.C. at 318, 631 S.E.2d at 300. Because counsel's error was insufficient to demonstrate pretext and the State offered no other evidence of pretext as required by step three of the *Purkett/Adams* analysis, we find the trial court erred in finding a *Batson* violation as to Juror 89.

**CONCLUSION**

■ In this case, Rogers offered race-neutral explanations for striking Jurors 65, 89, and 166. The State failed to offer sufficient evidence of purposeful discrimination, as required by step three of the *Purkett/Adams* analysis for determining whether a *Batson* violation has occurred. Furthermore, the record fails to support the trial court's finding of a *Batson* violation as to Jurors 65, 89, and 166. Because the trial court improperly granted the State's *Batson* motion and Jurors 65, 89, and 166 were seated on the second jury, Rogers was denied his right to exercise his peremptory challenges. Therefore, we remand this case for a new trial.[6] *See Ed-*

---

6. Because we reverse and remand this matter to the trial court, we need not consider Rogers' remaining sentencing issue. *See Futch v.*

*wards,* 384 S.C. at 509, 682 S.E.2d at 823 (holding if a trial court improperly grants the State's *Batson* motion and one of the disputed jurors is seated on the jury, then the erroneous *Batson* ruling has tainted the jury and prejudice is presumed because there is no way to determine with any degree of certainty whether a defendant's right to a fair trial by an impartial jury was abridged, and the proper remedy in such a case is a new trial). Accordingly, the decision of the trial court is

**REVERSED AND REMANDED.**

FEW, C.J., and CURETON, A.J., concur.

*McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when resolution of a prior issue is dispositive).